134 F.3d 933
 98 Cal. Daily Op. Serv. 444, 98 Daily Journal
D.A.R. 615
OLSON FARMS, INC., Plaintiff-Appellant-Cross-Appellee,
v.
J. Antonio BARBOSA, individually and in his official
capacity as Executive Secretary of the California
Agricultural Labor Relations Board; Michael B. Stoker,
individually and in his official capacity as Chairman of the
California Agricultural Labor Relations Board; Ivonne Ramos
Richardson, individually and in his official capacity as a
Member of the California Agricultural Labor Relations Board;
Paul Richardson, individually and in his official capacity
as General Counsel of the California Agricultural Labor
Relations Board, Defendants-Appellees-Cross-Appellants.
 Nos. 96-56017, 96-56100.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 5, 1997.
Decided Jan. 16, 1998.
 
 Christine N. Esckilsen and Theodore R. Scott, Littler, Mendelson, Fastiff, Tichy & Mathiason, San Diego, California, for plaintiff-appellant.
 Joseph A. Wender, Jr., Agricultural Labor Relations Board, Sacramento, California, for defendants-appellees.
 Appeals from the United States District Court for the Southern District of California; John S. Rhoades, District Judge, Presiding. D.C. No. CV-95-02359-JSR.
 Before: BROWNING, BRUNETTI and FERNANDEZ, Circuit Judges.
 FERNANDEZ, Circuit Judge:
 
 
 1
 Olson Farms, Inc. appeals the district court's dismissal of its action against the California Agricultural Labor Relations Board and others (collectively the ALRB), for lack of jurisdiction. See Fed.R.Civ.P. 12(b)(1). In effect, Olson asked the district court to review the determinations of the ALRB and the courts of California that Olson had violated the California Agricultural Labor Relations Act (ALRA). The ALRB appeals from the district court's denial of its request for sanctions. See Fed.R.Civ.P. 11. We affirm.
 
 BACKGROUND
 
 2
 Olson operates an egg processing and distribution facility in Gilroy, California. In November of 1975, the ALRB certified the General Teamsters Warehousemen and Helpers Union as the exclusive bargaining representative of Olson's agricultural employees, including those in the processing and distribution facility. The ALRB, an agency of the State of California, is organized in a manner similar to the National Labor Relations Board (NLRB). See Bud Antle, Inc. v. Barbosa, 45 F.3d 1261, 1264 (9th Cir.1995). The fundamental difference between the National Labor Relations Act (NLRA) and the ALRA is that the former excludes agricultural employees, while the latter applies only to those agricultural employees who are excluded by the former. Id.
 
 
 3
 The ALRB asserted jurisdiction based upon a December 14, 1988, stipulation between the Union, Olson, and the general counsel of the ALRB. That stipulation indicated that Olson purchased eggs from other producers only on an occasional basis. As it declared, "There were also times, because of insufficient supply, that eggs were purchased from outside business entities but that was not typical and was avoided whenever possible...." At no time did those untypical purchases exceed an average of 5% to 10% of the eggs processed.
 
 
 4
 Based upon the facts, including the stipulation, the ALRB determined in December of 1993 that the production and distribution laborers were, indeed, agricultural employees, and that Olson had previously failed to bargain with the Union in good faith. Olson appealed that decision to the California Court of Appeal, but that court ruled against it. In an unpublished decision, the court decided that under the circumstances the ALRB had jurisdiction because the ALRA was not even arguably preempted by the NRLA. Olson sought review in the California Supreme Court, but review was denied on June 28, 1995. No petition for a writ of certiorari was filed with the United States Supreme Court.[1]
 
 
 5
 Meanwhile, in January of 1994, Olson filed a petition with the NLRB in which it sought to clarify whether its employees were within the jurisdiction of that entity, and outside the jurisdiction of the ALRA. It told the NLRB a different factual story from that told to the ALRB, and it obtained a different result. The NLRB opinion indicates that Olson told it that:
 
 
 6
 [T]he Employer purchased eggs from outside suppliers (including joint ventures) on a weekly basis. The total number of outside eggs purchased during this period by the Employer exceeded 50% of the total eggs received from all sources during the same period, including the Ranch. Further, outside eggs accounted for about 35 to 82 percent of all eggs bought during each week in the last year. Only about 15 to 20 percent of the outside eggs received at the Facility come from joint ventures.
 
 
 7
 Approximately 40 to 50 percent of the eggs received from all outside sources are already packaged when they arrive at the Facility. Occasionally, however, these eggs are taken out of their packages and are regraded and repackaged by the employees in the processing plant.
 
 
 8
 Based upon those facts, the NLRB declared that "[t]he evidence adduced at the hearing clearly establishes that the employees involved in the egg processing and distribution operations regularly handle outside eggs and, therefore, are ... employees covered by the [NLRA]." However, the NLRB wisely declined to opine on the situation in prior years and declared that "the clarification made herein is only as of the date of the hearing herein [March 9, 1994]."
 
 
 9
 As we have already noted, Olson did not seek to have the ALRB's jurisdictional decision reviewed by the United States Supreme Court after that decision had been upheld by the California courts, but it did decide to seek review in the district court and filed this action September 26, 1995. The district court dismissed the action for lack of jurisdiction, and this appeal ensued.
 
 STANDARDS OF REVIEW
 
 10
 We review the district court's determination of subject matter jurisdiction de novo. See Allah v. Superior Court, 871 F.2d 887, 890 (9th Cir.1989). We review the district court's determination regarding sanctioning a party under Fed.R.Civ.P. 11 for an abuse of discretion. See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir.1992).
 
 JURISDICTION
 
 11
 We have jurisdiction pursuant to 28 U.S.C. § 1291. If the district court had jurisdiction, it was pursuant to 28 U.S.C. § 1331, but whether it did is the very question we must decide.
 
 
 12
 The district court determined that it lacked jurisdiction because the Rooker-Feldman doctrine precluded it from exercising appellate jurisdiction over the decisions of the California state courts. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923).
 
 
 13
 A. Review of ALRB Decision.
 
 
 14
 To the extent that Olson sought to have the district court, and seeks to have us, review the past jurisdictional decisions of the ALRB and the state courts, the district court was exactly right. As we said in Worldwide Church of God v. McNair, 805 F.2d 888 (9th Cir.1986):
 
 
 15
 The United States District Court, as a court of original jurisdiction, has no authority to review the final determinations of a state court in judicial proceedings. 28 U.S.C. § 1257 provides that the proper court in which to obtain such review is the United States Supreme Court.
 
 
 16
 Id. at 890. We further explicated the applicable law in Dubinka v. Judges of the Superior Court, 23 F.3d 218 (9th Cir.1994), where we stated:
 
 
 17
 Federal district courts may exercise only original jurisdiction; they may not exercise appellate jurisdiction over state court decisions. This rule arises from the interplay of two jurisdictional statutes: 28 U.S.C. § 1331, which grants district courts original jurisdiction over "civil actions arising under" federal law, and 28 U.S.C. § 1257, which grants the Supreme Court the right to review "final judgments ... rendered by the highest court of a State." This rule applies even when the state court judgment is not made by the highest state court, and when the challenge to the state court's actions involves federal constitutional issues.
 
 
 18
 Id. at 221 (citations omitted); see also Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs, 398 U.S. 281, 296, 90 S.Ct. 1739, 1748, 26 L.Ed.2d 234 (1970).
 
 
 19
 There are, no doubt, times when application of the Rooker-Feldman doctrine involves rather arcane and fine distinctions. For example, there are times when a court must ask whether a federal constitutional claim was "inextricably intertwined" with a state court decision or whether it is a separate general constitutional challenge. Feldman, 460 U.S. at 482-83 & n. 16, 103 S.Ct. at 1315-16 & n. 16; see also Dubinka, 23 F.3d at 221-22. But no such problem exists here. Purely and simply, Olson submitted the jurisdictional claim to the state courts and now seeks to have the federal courts adjudicate that selfsame jurisdictional claim. That we cannot do. Olson's remedy was to seek review in the United States Supreme Court; that was its only federal remedy. See Ethridge v. Harbor House Restaurant, 861 F.2d 1389, 1399 (9th Cir.1988). Nor is this conclusion at all contrary to our decision in Bud Antle, 45 F.3d 1261, where there was an attempt to enjoin an action of the ALRB which had not been subjected to review in the state court system. Id. at 1271.
 
 
 20
 But, argues Olson, because the ALRA is preempted by the NLRA, if the latter applies, the decisions of the ALRB and the courts of California must be ignored as void. We find no authority for that broad statement. On the contrary, as the Supreme Court said in a case involving the Railway Labor Act, even before Feldman was decided:
 
 
 21
 Again, lower federal courts possess no power whatever to sit in direct review of state court decisions. If the union was adversely affected by the state court's decision, it was free to seek vindication of its federal right in the Florida appellate courts and ultimately, if necessary, in this Court.... Unlike the Federal District Court, this Court does have potential appellate jurisdiction over federal questions raised in state court proceedings....
 
 
 22
 Atlantic Coast Line, 398 U.S. at 296, 90 S.Ct. at 1748. And we said much the same thing in Exxon Shipping Co. v. Airport Depot Diner, Inc., 120 F.3d 166, 169-70 (9th Cir.1997), which involved admiralty issues, and again in Ethridge, 861 F.2d at 1399, which involved NLRA preemption issues. Ethridge was a removal case, but it is significant that we decided that preemption was "a jurisdictional issue that should be addressed by the state courts." Id. at 1399. Moreover, we said, if the state courts erred in deciding the jurisdictional question, "review of that decision may be had in the Supreme Court." Id. We would not have taken that view had we thought that the state court decision would be absolutely void and, therefore, subject to collateral attack in a proceeding in the district court.
 
 
 23
 Olson, however, rests its attack on two other decisions, one by the Supreme Court and one by us. Neither will bear the argument's weight. The Supreme Court decision did refer to the state court's lack of power to decide a claim which triggered preemption, but that was on a direct appeal from the Alabama Supreme Court. See International Longshoremen's Ass'n v. Davis, 476 U.S. 380, 398-99, 106 S.Ct. 1904, 1916, 90 L.Ed.2d 389 (1986). To cite a direct appeal case for the proposition that a district court can review state court jurisdictional decisions is to beg the very question before us. The other case upon which Olson relies is our decision in Bud Antle, 45 F.3d 1261. Again, that case is inapposite. As we have already pointed out, Bud Antle involved a direct attack on the ALRB's position, and was not an attempt to have us review jurisdictional determinations by California state courts which had decided the merits. Id. at 1267.
 
 
 24
 In a final effort to save the retrospective part of its case, Olson argues that the Rooker-Feldman doctrine is really just another facet of res judicata and, therefore, cannot apply where there is preemption. That is a dubious and unsupported proposition. In the first place, an assumption that res judicata would not apply is hardly warranted. See Robinson Rancheria, 971 F.2d at 249-51 (California state court's jurisdictional determinations have res judicata effect). More importantly, Rooker-Feldman is a jurisdictional doctrine, rather than a res judicata doctrine. See Dubinka, 23 F.3d at 221; MacKay v. Pfeil, 827 F.2d 540, 543 & n. 4 (9th Cir.1987). But cf. Robinson v. Ariyoshi, 753 F.2d 1468, 1472 (9th Cir.1985) (Where state court refused to decide federal issue, our decision of that issue will not be review of state court decision and will not be barred on jurisdiction or res judicata grounds), vacated on other grounds, 477 U.S. 902, 106 S.Ct. 3269, 91 L.Ed.2d 560 (1986). Thus, Olson can grab hold of this straw, but doing so will not keep its case afloat.
 
 
 25
 B. Prospective Relief.
 
 
 26
 To the extent that Olson seeks prospective declaratory and injunctive relief, our analysis must be somewhat different. The NLRB has now held that as of March 9, 1994, the employees in question were within the jurisdiction of the NLRB. That, of course, means that they were not within the jurisdiction of the ALRB as of that date. Were the ALRB to attempt to assert prospective jurisdiction, injunctive relief might well be proper. See Bud Antle, 45 F.3d at 1278. We also observe that in Bud Antle we did not treat the NLRB's refusal to rule retrospectively as a decision that it did not have jurisdiction to do so. Id. at 1276-78. We saw no real distinction between the Bud Antle operations, which had been considered by the ALRB, and those operations which were considered by the NLRB. Id. at 1275. That is not the case here.
 
 
 27
 The facts upon which the NLRB decided that the employees were covered by the NLRA in 1994 were vastly different from those which prompted the ALRB to decide that the employees were covered by the ALRA in some of the prior years. Under the facts before the NLRB, there could be little doubt that Olson's robust use and processing of other farmers' eggs was on a regular basis, rather than on a rare and emergency basis. See Camsco Produce Co., Inc. v. Local 951, United Food and Commercial Workers, 297 NLRB 905, 908 (1990). Under the facts before the ALRB, use of outside eggs was avoided whenever possible, and they were not typically purchased at all. At the time of the NLRB decision, from 35 to 82% of all eggs came from the outside, but during the time when the ALRB had jurisdiction outside purchases did not exceed 5 to 10%.
 
 
 28
 There is no evidence that the ALRB will assert jurisdiction under this condition of drastically changed operations. In fact, it assures us that it recognizes just how evanescent its jurisdiction was and it "unhesitatingly acknowledges that it may not act in a manner which interferes with the NLRB's assertion of jurisdiction and it has no intention to do so." It insists that it only intends to provide a remedy for those periods when it did have jurisdiction over the Olson employees. Olson has presented nothing to indicate that the contrary is true. Nor is there any indication of the precise nature of the wrongdoing that the ALRB will allegedly attempt in the future, despite its assurances to this court. In other words, the case for prospective relief is speculative, conjectural and hypothetical. See Partington v. Gedan, 961 F.2d 852, 862 (9th Cir.1992); Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir.1981). More briefly, it is not ripe. See Portland Police Ass'n v. City of Portland, 658 F.2d 1272, 1273 (9th Cir.1981). The district court had no jurisdiction over this part of the claim either.[2]
 
 CONCLUSION
 
 29
 All parties to this action agree that the NLRB obtained jurisdiction over Olson's egg processing and distribution employees as of March 9, 1994. Olson seeks to preclude future ALRB interference with that jurisdiction. But there is no evidence that there is a ripe dispute on that score.
 
 
 30
 Olson also seeks to have the NLRB decision apply to the jurisdictional determinations of the state courts for earlier periods. That Olson cannot accomplish because neither the district court nor we can arrogate the power to preside over what amounts to an appeal from the decisions of the state courts. Olson's route for federal review was a direct, if gated, highway to the Supreme Court. It could not choose to travel a byway to the lower federal courts instead. Olson, inspired by Proteus, has changed into an NLRA employer. We must draw our inspiration from Clio, we cannot rewrite Olson's ALRA past.
 
 
 31
 AFFIRMED. Appellees shall recover their costs on appeal.
 
 
 
 [1]
 On April 7, 1997, the California Court of Appeal ruled on another appeal by Olson regarding a factually indistinguishable period. The court applied collateral estoppel and admonished Olson for its intransigence. Nothing in that ruling affects our analysis. At argument we were informed that this decision of the Court of Appeal has also become final
 
 
 [2]
 While we agree with the district court that Olson could not spell out jurisdiction, we also agree with the district court that this was not a case for sanctions. See Fed.R.Civ.P. 11. Certainly, the district court did not abuse its discretion when it denied them. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990)