Opinion by Judge DAVID R. THOMPSON; Dissent by Judge FLETCHER.
DAVID R. THOMPSON, Circuit Judge:
Robert Gruntz, a debtor in bankruptcy, was convicted in California state court on criminal charges of failing to pay child support. He argued in state court that his prosecution was invalid because it violated the automatic stay in his bankruptcy proceeding. See 11 U.S.C. § 362. The state court rejected this argument, and Gruntz was convicted. His conviction was affirmed by the California Court of Appeal.
Gruntz then filed an adversary complaint in the bankruptcy court and sought injunctive and declaratory relief. He sought, among other things, an order from the bankruptcy court that his California state court conviction was invalid because it violated the automatic stay of 11 U.S.C. § 362. .
The bankruptcy court granted the appel-lee Los Angeles County’s motion to dismiss the complaint. The bankruptcy court held that collateral estoppel precluded Gruntz from relitigating in the bankruptcy court the stay issue which he had litigated in the California trial and appellate courts. Gruntz then appealed to the district court.
The district court affirmed the bankruptcy court’s dismissal of Gruntz’s complaint. It did so on the basis of the Rook-er-Feldman doctrine, which generally prohibits federal courts from reviewing state court decisions. Gruntz now appeals to this court.
Because we conclude that neither collateral estoppel nor the Rooker-Feldman doctrine apply, we reverse, and remand this case to the district court for remand to the bankruptcy court with directions to determine whether the state court proceedings violated the automatic stay of 11 U.S.C. § 362.
*731 STANDARDS OF REVIEW
“Because this court is in as good a position as the district court to review the findings of the bankruptcy court, it independently reviews the bankruptcy court’s decision.” Ragsdale v. Haller, 780 F.2d 794, 795 (9th Cir.1986). When a dismissal rests on principles of preclusion, we review the decision de novo. Clark v. Bear Stearns & Co., 966 F.2d 1318, 1320 (9th Cir.1992). Review is also de novo when dismissal is based on a lack of sub ject matter jurisdiction. Erickson v. Desert Palace, Inc., 942 F.2d 694, 694-95 (9th Cir.1991).
FACTS[1]
In October 1988, while Gruntz was under a state court order to pay child support of $300 per month to his ex-wife, he filed for Chapter 13 bankruptcy protection. According to his Chapter 13 reorganization plan, Gruntz was to pay his $300 per month child support payments to his Chapter 13 trustee. In addition to these payments, the reorganization plan obligated Gruntz to pay $291.50 per month to pay off an accumulated arrearage of $5,100 in past due child support.
Gruntz alleges he began making the planned payments to his Chapter 13 trustee. The Chapter 13 proceeding, however, was converted to a Chapter 11. The administrative expenses of this conversion ate up the available money held by the Chapter 13 trustee, with the result that the trustee did not pay Gruntz’s ex-wife the required child support payments. The ex-wife became upset with this, and sought assistance from the Los Angeles County District Attorney’s office.
By the time the D.A.’s office contacted Gruntz, the County claimed his child support arrearages totaled $17,000. The D.A.’s office told Gruntz that it would bring criminal charges against him if he did not agree to an arrangement for payment of his past due child support obligation and pay his current support payments through the D.A.’s office. Gruntz informed the D.A.’s office of his pending bankruptcy proceeding and told the D.A. that he was required to make his child support payments to the bankruptcy court trustee. Gruntz further told the D.A. that any state criminal prosecution would be subject to the automatic stay provision of 11 U.S.C. § 362 because it would be an attempt to coerce him into paying his past due and current child support payments.
Neither the D.A. nor Gruntz’s ex-wife filed a claim in Gruntz’s bankruptcy proceeding. Nor did the D.A. seek relief from the automatic stay in the bankruptcy court. Instead, in October 1990, the D.A. filed a misdemeanor criminal complaint against Gruntz charging him with violating California Penal Code § 270 (failure to support dependent children). Two days later, the D.A.’s office notified the State Bar of California that criminal charges had been filed against Gruntz. With these charges pending, Gruntz, a law school graduate, could not be admitted to the State Bar.
The D.A.’s office offered to agree to a suspended sentence if Gruntz would plead guilty and pay the back child support. Gruntz maintained that he could not agree to the D.A.’s terms because he was under an order to make his support payments to the bankruptcy court trustee. Gruntz also refused to plead guilty for fear his conviction would prevent his admission to the California State Bar.
Gruntz proceeded to trial before a jury. At trial, according to Gruntz, the court precluded him from presenting a defense based on his payment of child support to the bankruptcy trustee.[2] The jury eonvict- *732 ed him of the willful failure to pay child support in violation of California Penal Code § 270.
After his conviction, but before he was sentenced, Gruntz filed an adversary complaint against the County in the bankruptcy court, and sought a temporary restraining order to prevent the County from proceeding with the sentencing hearing. The bankruptcy court declined to issue a restraining order, and Gruntz was sentenced to 360 days in jail. His conviction was affirmed by the California Court of Appeal. People v. Gruntz, 29 Cal.App.4th 412, 35 Cal.Rptr.2d 55 (1994).
While Gruntz’s criminal appeal was pending, he suffered a second conviction for violating California Penal Code § 270. He was also convicted of violating California Penal Code § 166.4 (failure to obey a state court order). Gruntz appealed these convictions as well.
Gruntz eventually filed a second adversary complaint against the County in the bankruptcy court. He sought, among other things, a declaration that the state criminal prosecutions were void because they were conducted in violation of the automatic stay. Gruntz also sought an injunction ordering the California Court of Appeal to decertify its opinion in People v. Gruntz, and requiring the D.A.’s office to take whatever actions were necessary to clear Gruntz’s criminal record and to notify all federal and state agencies and the State Bar of California.
The County moved in the bankruptcy court to dismiss Gruntz’s complaint. The bankruptcy court granted the motion, reasoning that because the California courts had considered and rejected Gruntz’s assertion that the criminal proceedings violated the automatic stay in bankruptcy, collateral estoppel precluded Gruntz from relitigating that issue. The bankruptcy court dismissed the complaint with prejudice. Gruntz appealed to the district court, which affirmed the dismissal on the basis of the Rooker-Feldman doctrine. See Rooker v. Fidelity Trust, 263 U.S. 413, 415-16, 44 S.Ct. 149, 68 L.Ed. 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 486-87, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). This doctrine generally precludes federal courts (except the United States Supreme Court) from reviewing state court decisions.
Gruntz now appeals to this court. We have jurisdiction under 28 U.S.C. § 158(d). We reverse and remand to the district court with instructions to remand to the bankruptcy court to determine whether the state court criminal proceedings violated the automatic stay in bankruptcy.
DISCUSSION
I
The Criminal Convictions
This appeal turns on whether the California state courts had preclusive jurisdiction to determine if the state criminal proceedings against Gruntz were excluded from the automatic stay in bankruptcy.
Among other things, 11 U.S.C. § 362 provides for an automatic stay of “any act to obtain possession of property of the estate or property from the estate or to exercise control over property of the estate”, 11 U.S.C. § 362(a)(3), and “any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the [bankruptcy court proceeding]”, 11 U.S.C. § 362(a)(6). Certain acts, however, are excluded from the automatic stay, e.g. “the commencement or continuation of a criminal action or proceeding against the debtor”, 11 U.S.C. § 362(b)(1), “the collection of alimony, maintenance, or support from property that is not property of the estate”, 11 *733 U.S.C. § 362(b)(2),[3] and “the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit’s police or regulatory power”, 11 U.S.C. § 362(b)(4).
The County relies, in part, on 11 U.S.C. § 362(b)(1) to argue that its criminal prosecution of Gruntz is excluded from the automatic stay. Gruntz contends that only the federal courts can determine whether the state proceedings against him for his alleged failure to pay child support were in fact criminal proceedings excluded from the automatic stay under section 362(b)(1). The issue is whether the state had the ultimate power to determine the reach of the automatic stay in bankruptcy.
Congress, pursuant to its plenary constitutional power over bankruptcy, has granted original and exclusive jurisdiction to the district courts for all cases in bankruptcy under title 11. See U.S. Const. Art. I, § 8, cl. 4; 28 U.S.C. § 1334(a).[4] In the Central District of California-, as in other districts in the United States, this original and exclusive jurisdiction is exercised by the bankruptcy courts on reference from the district courts. See 28 U.S.C. § 167(a) and C.D. Cal. General Order 266 (Oct. 9, 1984) (as amended by Gen. Order 266-A (Feb. 13,1995)).
“The automatic stay is one of the fundamental debtor protections provided in the bankruptcy laws.” H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 340 (1977), reprinted in 1978 U.S.Code Cong. & Admin. News 5963, 6296.[5] State court jurisdiction to determine the effect of and exceptions to such a fundamental bankruptcy tool “would be inconsistent with and subvert the exclusive jurisdiction of the federal courts by allowing state courts to create their own standards.... ” See Gonzales v. Parks, 880 F.2d 1033, 1035 (9th Cir.1987) (holding that state courts have no jurisdiction to determine the propriety of a debt- or’s bankruptcy petition); see also In re Raboin, 135 B.R. 682, 684 (Bankr.D.Kan.1991) (“[T]his court has exclusive jurisdiction to determine the extent and effect of the stay, and the state court’s ruling to the contrary does not bar the debtor’s present motion.”); In re Sermersheim, 97 B.R. 885, 888 (Bankr.N.D.Ohio 1989) (“It is the bankruptcy court alone that has the exclusive jurisdiction to determine questions involving the automatic stay.”). Accordingly, the state court judgment that the criminal proceeding did not violate the automatic stay was subject to the bankruptcy court’s decision on that issue. The state could either seek relief from the automatic stay or proceed subject to any decision of the bankruptcy court on the scope of the automatic stay.
The County contends that a state court’s determination of its own subject matter jurisdiction, even if wrong, must be given preclusive effect. The County correctly states the general rule. “[T]he general rule [is] that a judgment is entitled to full faith and credit-even as to questions of jurisdiction-when the second court’s inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original *734 judgment.” Durfee v. Duke, 375 U.S. 106, 111, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963); see also United States v. Van Cauwenberghe, 934 F.2d 1048, 1058-60 (9th Cir.1991); Restatement (Second) of Judgments § 12 (1982). The general rule, however, does not apply in this case. Neither party has presented anything to suggest that either the state trial or appellate courts in Gruntz’s prosecutions considered whether they had jurisdiction to determine issues regarding the automatic stay. The California Court of Appeal apparently assumed it had jurisdiction and proceeded to decide whether the stay applied to the pending action. Gruntz, 29 Cal.App.4th at 417, 35 Cal.Rptr.2d 55. Cf. Van Cauwenberghe, 934 F.2d at 1059 (when the district court made its decision, it “tacitly” made a determination regarding its jurisdiction because the issue had been fully briefed). Because there is nothing in the record before us indicating that the question of jurisdiction was actually presented to the California state courts, there can be no implicit jurisdictional determination entitled to preclusive effect under Durfee or Van Cauwenberghe.
Even if we were to find implicit determination of the jurisdiction issue, however, the state courts’ decision would still have no preclusive effect. Durfee and the cases it cites all involve jurisdictional issues based on questions of fact. In Durfee, the Supreme Court held that the Nebraska courts had jurisdiction to determine their own jurisdiction over a parcel of land despite the appellant’s contention that the land was situated in Missouri. Durfee, 375 U.S. at 116. Once the location of the parcel had been fully and fairly litigated in Nebraska state court, that court’s determination regarding the parcel’s location within Nebraska was not subject to collateral attack. Id. In contrast, the present case presents the purely legal question whether state courts’ determinations regarding the reach of an automatic stay in bankruptcy preclude a bankruptcy court from deciding that issue. *A purely legal jurisdictional question was presented in Van Cauwen-berghe. There, the question was whether “remedial statutes of the United States should [ ] be construed to apply to suits between foreign nationals whose private disputes over allegedly tortious conduct happen to have touched the United States.” Van Cauwenberghe, 934 F.2d at 1058. The question was answered by a federal district court with unquestioned jurisdiction to consider the reach of the federal statute. Id. at 1059. In contrast, the facts and proceedings in the present case involve state courts deciding an issue of federal bankruptcy law over which federal courts have exclusive jurisdiction. The general rule of Durfee is inapplicable in these circumstances.
Moreover, even if the general rule applies, Durfee and Van Cauwenberghe, as well as the Restatement (Second) of Judgments, note there are exceptions. See Durfee, 375 U.S. at 114 and Van Cauwenberghe, 934 F.2d at 1059 (both citing Kalb v. Feuerstein, 308 U.S. 433, 438-44, 60 S.Ct. 343, 84 L.Ed. 370 (1940) (holding that a state court foreclosure proceeding was preempted by bankruptcy laws, making the state proceeding subject to collateral attack)); Restatement (Second) of Judgments § 12(2) (exception exists where, “[Allowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government”). The present case, like Kalb, involves a state court decision subject to collateral attack due to federal preemption over bankruptcy. If allowed to stand, the decision of the California state courts would “substantially infringe the authority” of the bankruptcy court.[6]
*735 Accordingly, even if the state courts implicitly decided the jurisdictional question, their decision is not entitled to preclusive effect. We hold the bankruptcy court erred in dismissing Gruntz’s complaint on the basis of collateral estoppel.
For similar reasons, the district court erred in affirming the bankruptcy court’s dismissal on the basis of the Rooker-Feldman doctrine. In Rooker, the Supreme Court held that where the state “court had jurisdiction of both the subject matter and the parties; that a full hearing was had therein; that the judgment was responsive to the issues, and that it was affirmed by the Supreme Court of the State on an appeal ... no court of the United States other than this [the Supreme] Court could entertain a proceeding to reverse or modify the judgment for errors of that character.” Rooker, 263 U.S. at 415-16. Sixty years later, the Court held that the district courts lacked jurisdiction to consider allegations which “are inextricably intertwined” with a state court’s final judgment. Feldman, 460 U.S. at 486-87 (1983).[7] The primacy of the bankruptcy court’s jurisdiction over the scope of an automatic stay was not at issue in either Rooker or Feldman. Here it is, and as we have concluded, the state court’s decision is subject to the determination of the bankruptcy court, and the state court decision is not entitled to preclusive effect under the Rooker-Feldman doctrine because the state court decision may be void ab initio. See In re James, 940 F.2d 46, 52 (3d Cir.1991) (citing Kalb, 808 U.S. at 438-40) (“There appears to be only one exception to this hard and fast rule of federal-state comity [Rooker-Feldman], and it comes into play only when the state proceedings are considered a legal nullity and thus void ab initio.”); see also In re Audre, Inc., 216 B.R. 19, 29 (9th Cir. BAP 1997).
This is not a new exception to the Rooker-Feldman doctrine or to the general rule that we give full faith and credit to state court jurisdictional decisions. We have previously reviewed state court judgments based on allegations that the judgments were void because they violated the automatic stay in bankruptcy. See In re Hucke, 992 F.2d 950, 953 (9th Cir.1993) (“In sum, if the present state [probation] revocation proceeding constituted collection efforts, then it would violate the automatic stay and would be void.”); In re Shamblin, 890 F.2d 123, 127 (9th Cir.1989) (declaring a tax-foreclosure judgment and sale void as violative of the automatic stay); Stringer, 847 F.2d at 551-53 (order increasing child support payments was void because it violated the automatic stay).
We conclude that the bankruptcy court may review Gruntz’s state court convictions to determine whether they are void because the automatic stay precluded Gruntz’s prosecution. We agree with the Bankruptcy Appellate Panel that
[a] nonbankruptcy court has jurisdiction to determine whether the stay applies, but, since the bankruptcy court has exclusive authority to vacate or modify the stay, any action by the non-bankruptcy court that results from too narrow a construction of the automatic stay risks being treated as void ab initio. Schwartz v. United States (In re Schwartz), 954 F.2d 569, 573-75 (9th Cir.1992); Gonzales v. Parks, 830 F.2d 1033 (9th Cir.1987).
This result of only honoring correct decisions, although unusual, pertains *736 even under the newer view of judgments espoused in the Restatement (Second) of Judgments: “When a court has rendered a judgment in a contested action, the judgment precludes the parties from litigating the question of the court’s subject matter jurisdiction in subsequent litigation except if: ... (2) Allowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government”. Restatement (Second) of Judgments § 12(2).
Pavelich v. McCormick, Barstow, Sheppard, Wayte & Carruth LLP (In re Pavelich), 229 B.R. 777, 783-84 (9th Cir. BAP 1999) (citations and ellipsis in original).
The County does not contest the proposition that if indeed the criminal prosecutions violated the automatic stay, they were void. See Stringer v. Huet (In re Stringer), 847 F.2d 549, 551 (9th Cir.1988) (“Any proceedings in violation of the automatic stay are void.”). And Gruntz does not contend there was any error in the state criminal prosecutions except a violation of the automatic stay. The validity of the criminal prosecutions, therefore, turns precisely on whether the County’s actions in prosecuting Gruntz violated the automatic stay.
The County asks that we answer the question based on the facts before us. The County argues that as a matter of law we can conclude the state’s criminal prosecutions did not violate the automatic stay because criminal prosecutions are expressly excluded from the reach of the automatic stay by 11 U.S.C. § 362(b)(1) and (4). Subsection (b)(1) excludes from the automatic stay criminal proceedings against a debtor; subsection (b)(4) excludes “the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit’s police or regulatory power.” We reject the County’s argument. A criminal prosecution is not automatically excluded from the reach of the automatic stay. If the purpose of the prosecution is to “collect, as-sess or recover a claim” against a debtor in bankruptcy, the prosecution will violate the automatic stay. See Hucke, 992 F.2d at 953 (quoting 11 U.S.C. § 362(a)(6)).
Hucke presented essentially the same issue we now face, i.e., whether a state criminal proceeding undertaken while an automatic stay was in force was actually an attempt to collect money. Id. In order to determine whether the automatic stay applied to Hucke’s probation revocation hearing, we looked beyond the title of that proceeding to determine its true nature. Id.
Certainly, the mere institution of a probation revocation proceeding, without more, would constitute a continuation of a criminal action against the defendant/debtor and, thus, be exempt from the automatic stay.... However, if the probation hearing had as its aim the collection of the fine, then it would run afoul of § 362(a)(6), which stays acts intended to “collect, assess or recover a claim” against the debtor. In sum, if the present state revocation proceeding constituted collection efforts, then it would violate the automatic stay and would be void.

Id.

Hucke had pleaded guilty to rape and had been sentenced in state court to five years probation on the condition that he pay over $20,000 in restitution and fines. Id. at 951. The state court retained jurisdiction to impose a 36-month prison sentence if Hucke violated the conditions of his probation. Id. Hucke later filed for bankruptcy protection without having paid any of the court ordered restitution or fines. Id. Because Hucke was in violation of his probation conditions, the state sought to revoke his probation. At the probation revocation hearing the court revoked Hucke’s probation and imposed the 36-month prison sentence. Hucke then filed an adversary proceeding in his Chapter 13 case seeking to void the revocation *737 of his probation, contending that revocation violated the automatic stay.
This court, reviewing the case, looked beyond the apparent criminal nature of the proceedings to determine if the proceedings violated the automatic stay. Id. at 953. We concluded the automatic stay did not apply because the state court had “made it very clear during the revocation proceedings that [it] was not interested in collecting the fine” and had in fact “rejected the offer of Hucke’s counsel to restructure the Chapter 13 plan so that payments on the compensatory fine would come close to one hundred percent of the total amount imposed.” Id.
Gruntz, like Hucke, faced criminal proceedings as a result of his failure to pay a court imposed financial obligation. The critical difference, however, is that contrary to the facts in Hucke which dispelled any notion that the proceeding was intended to recover money, Gruntz alleges that the County threatened to prosecute him unless he paid the back child support, and then offered a suspended sentence if he would pay the money he owed. These allegations, if proved, would tend to support a finding that Gruntz’s criminal prosecution for failure to support his children was intended as a debt collection action. If that should be the case, neither the exception to the automatic stay for criminal proceedings provided by subsection 362(b)(1), nor the exception for a proceeding by a governmental unit to enforce its police or regulatory power provided by subsection 362(b)(4), would apply. See Hucke, 992 F.2d at 953. Because the bankruptcy court has not yet held a hearing to determine the purpose of the criminal prosecutions, we have no record upon which to decide this critical question, and we decline to do so.
The County argues alternatively that under 11 U.S.C. § 362(b)(2), its criminal prosecutions are excluded from the automatic stay because they were proceedings for the “collection of support from property that is not property of the estate.” As Gruntz points out, however, there is nothing in the record from which we can determine whether the County’s “collection” actions were aimed only at non-estate property. The parties dispute when Gruntz’s bankruptcy proceeding was actually converted from Chapter 13 to Chapter 11. Gruntz contends the conversion did not take place until September, 1990 when the bankruptcy judge signed the conversion order. The County, however, contends the bankruptcy judge converted the proceedings to Chapter 11 in December, 1989. The timing of the conversion is relevant because a bankruptcy estate in a Chapter 13 proceeding “includes earnings of the debtor acquired after filing ... but before disposition of the case.” Carver v. Carver, 954 F.2d 1573, 1577 (11th Cir.1992); In re Suarez, 149 B.R. 193, 195 (Bankr.D.N.M.1993) (“The automatic stay protects all property of the estate and prohibits any proceedings against property of the estate, even when the proceedings are designed to enforce alimony or support obligations.”) (quotation omitted).
Even accepting arguendo the County’s contention that the conversion occurred in December, 1989, we have no evidence before us to suggest that the County’s alleged collection actions were directed only at non-estate assets or that Gruntz had any non-estate assets with which to pay the arrearages the County sought.
Because we do not have before us the necessary facts to determine whether an exception to the automatic stay applied to the criminal proceedings against Gruntz, and because it is not our function in any event to make factual findings, we must remand this ease for further proceedings.
We should add that very few state criminal prosecutions are impacted by our holding today. Generally, “the commencement or continuation of a criminal action or proceeding against he debtor” remain exempt from the automatic stay, 11 U.S.C. § 362(b)(2)(l), and only in those rare cases where the criminal prosecution may be *738 characterized as a collection effort will the issue of the preclusive effect of state courts’ interpretations of the automatic stay arise.
II
The 1989 Modification Order
In 1989, the state court modified Gruntz’s child support order by adding a 2% service charge onto his semimonthly payments. This occurred while the automatic stay was in place. Gruntz argues that the bankruptcy court, as affirmed by the district court, erred by dismissing his complaint without leave to amend to more clearly allege that the 1989 modification order violated the automatic stay.
The question whether the 1989 modification order violated the automatic stay depends upon whether that order had an economic impact on the debtor; if it did, it is not excluded from the automatic stay. Stringer, 847 F.2d at 552-53 (modification order violated the automatic stay by increasing support obligations by $100). Gruntz asserts that if given the opportunity he could clearly allege that the 1989 modification order resulted in an increase in his support obligation. He contends he would allege that the modification order significantly increased the amount of his arrearage from $5,100 to approximately $17,000 and that the state court added a 2% service charge onto his semimonthly payments.
Although the modification order did increase Gruntz’s monthly child support payments by adding a 2% service charge, the order makes no reference to any arrearag-es. Accordingly, if the modification order violates the automatic stay, it does so only to the extent that it requires a 2% increase in Gruntz’s support obligations to cover the County’s expenses of receiving and disbursing support payments through the D.A.’s office. Because Gruntz could allege that the 1989 modification order increased his support obligation, his complaint should not have been dismissed without leave to amend.[8] See Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir.1996).
CONCLUSION
The bankruptcy court erred in dismissing Gruntz’s complaint based on collateral estoppel principles. The ultimate determination regarding the applicability of the automatic stay in bankruptcy is within the purview of the federal courts. Accordingly, neither collateral estoppel nor the Rooker-Feldman doctrine precludes the bankruptcy court from determining whether Gruntz’s state court criminal prosecutions were void because they violated the automatic stay.
With regard to Gruntz’s allegation that the County impermissibly increased his child support obligation in violation of the automatic stay, the bankruptcy court erred by dismissing Gruntz’s complaint without leave to amend to permit Gruntz to allege that the state court’s addition of the 2% service fee onto his already existing support obligation was a modification of that obligation in violation of the automatic stay.
We REVERSE and REMAND to the district court for remand to the bankruptcy court with directions that the bankruptcy court conduct further proceedings consistent with this opinion.
REVERSED and REMANDED.

. Because this is an appeal from the dismissal of a complaint for failure to state a claim, the facts taken from Gruntz's complaint are presumed to be true and all reasonable inferences are drawn in his favor. See In re Hunter, 66 F.3d 1002, 1004 (9th Cir.1995).

. Gruntz does not allege whether he was prevented from establishing that he had actually *732 paid all or some of his child support payments to the bankruptcy trustee, or whether he merely wanted to assert that he was under an order to pay the bankruptcy court and as a result this was a defense to the charge of failing to pay child support to his ex-wife or the D.A.

. Subsection (b)(2) of 11 U.S.C. § 362 was amended in 1994 to add as additional exclusions from the automatic stay, actions to establish paternity and actions to establish or modify alimony, maintenance and support orders. 11 U.S.C. § 362(b)(2)(A)(i) and (ii) (1994). However, these additional exclusions do not apply retroactively. See Bankruptcy Reform Act of 1994, Pub.L. No. 103-394, § 702, 108 Stat. 4106 (1994); H.Rep. 103-835 at 59.

. An exception to exclusive jurisdiction exists if Congress specifically grants another court jurisdiction over certain subject matter, in which case the district courts have original but not exclusive jurisdiction. 28 U.S.C. § 1334(b). This exception does not apply in the present case.

.The stay was designed “to protect! ] the relative position of creditors [and] ... shield the debtor from financial pressure during the pendency of the bankruptcy proceeding.” Stringer v. Huet (In re Stringer), 847 F.2d 549, 551-52 (9th Cir.1988).

. The County suggests that the Second and Sixth Circuits "have concluded that state courts have jurisdiction to determine the applicability of the Bankruptcy Code’s automatic stay” to the exclusion of a decision on the issue by a bankruptcy court. We disagree. Neither case the County relies on presented a question of exclusive state court jurisdiction. See NLRB v. Edward Cooper Painting, Inc., 804 F.2d 934, 940 (6th Cir.1986) ("[T]he *735 NLRB proceeded at its own risk. If it was later determined that the proceeding was not excepted from the automatic stay, the entire NLRB proceeding would be void ab initio as an act taken in violation of the stay.”); In re Baldwin-United Corp. Litigation, 765 F.2d 343, 347 (2d Cir.1985) (federal district court had jurisdiction to determine its own jurisdiction in light of the automatic stay resulting from a separate bankruptcy case).

. The Supreme Court considered the District of Columbia Court of Appeals to be equivalent to a state court. Feldman, 460 U.S. at 464, 103 S.Ct. 1303.

. As noted supra, n. 3, by the 1994 amendment to 11 U.S.C. § 362(b)(2), actions to modify support orders were added to the list of proceedings excluded from the automatic stay, but this 1994 amendment does not apply to the present case.