BOARD OF TRUSTEES OF THE LE-
LAND STANFORD JUNIOR UNI-
VERSITY, in its capacity as a Man-
agement and Operating contractor for
the United States Department of En-
ergy, Plaintiff,

v.

MODUAL A/C SYSTEMS, INC., a Cali-
fornia corporation; Quick–Set Con-
struction Co., a California corpora-
tion; Specialized Drywall Systems,
Inc., a California corporation; Whe-
lan Electric, a California corporation;
Trumpp Brothers, Inc, a California
corporation; Kayar Corporation, do-
ing business as Regevig Roofing;
BHP Steel Building Products USA,
Inc., a Washington corporation, De-
fendants.

No. C 99–00680 CW.

United States District Court,
N.D. California.

July 1, 1999.

Jeffrey A. Rich, Weintraub, Genshlea & Sproul, Sacramento, CA, for plaintiff.

Michael P. Quinlivan, Kouns, Quinlivan & Severson, San Jose, CA, for Modual A/C Systems, Inc., defendant.

Donald K. Struckmann, Roseville, CA, for BHP Steel Building Products USA, Inc., defendant.

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

WILKEN, District Judge.

This case arises from a series of contracts between the United States Department of Energy (DOE) and Plaintiff Board of Trustees of the Leland Stanford Junior University (Stanford), Stanford and PBS Building Systems, Inc. (PBS), and PBS and Defendants. Defendants move to dismiss Stanford's complaint. Stanford opposes Defendants' motions and moves for a preliminary injunction to prevent Defendants from enforcing the judgment obtained against Stanford in State court. Having considered all of the papers filed by the parties, the Court grants Defendants' motions to dismiss and denies Stanford's motion for a preliminary injunction.

## BACKGROUND

Pursuant to a contract between the DOE and Stanford (the DOE contract), Stanford operates the Stanford Linear Accelerator Center (SLAC), a federal research facility, in San Mateo County.

In 1994, Stanford engaged PBS to construct and install a modular structure at SLAC. Neither Stanford nor PBS obtained a Miller Act bond. *See* 40 U.S.C. § 270a, *et seq.*[1] During the course of the project, PBS filed for bankruptcy. Although Defendants, a group of subcontractors, completed the work they contracted to perform at SLAC, PBS failed to pay them.

On April 28, 1995, Defendants filed their original complaint in United States District Court in San Jose, California, alleging that Stanford violated the Miller Act by failing to execute and furnish a payment bond. On September 12, 1995, the Honorable Ronald M. Whyte found that the Miller Act did not apply because neither Stanford nor PBS had obtained a payment bond and that Defendants thus failed to establish subject matter jurisdiction. The court dismissed Defendants' complaint with leave to amend. In so doing, the court suggested that Defendants appeared to have a claim for breach of contract as third party beneficiaries despite the absence of a bond, but that such a claim would have to be brought in State court.

Defendants subsequently filed a complaint in San Mateo County Superior Court, alleging that Stanford had breached its contract with the DOE by failing to provide the bonds required by federal law and asserting that Stanford was liable to Defendants as third-party beneficiaries of the contract.

After conducting a bench trial, the superior court found Stanford liable and ordered it to pay damages to Defendants. In so ruling, the court expressly rejected Stanford's contention that it was entitled

---

1. The Court intimates no opinion on whether Stanford had any obligation to obtain such a bond.

to sovereign immunity. The court also found that Stanford, as a "management and operating contractor" (M & O contractor), was the prime contractor and thus was obliged to obtain a Miller Act payment bond. In the alternative, the court found that, even if Stanford were not the prime contractor, it was nonetheless obliged to procure a bond.

On September 17, 1997, Stanford appealed the superior court's decision. On October 26, 1998, the California Court of Appeal, in an unpublished opinion, affirmed the lower court's finding of liability. The appellate court agreed that Stanford was obliged under its contract with the DOE to obtain a Miller Act bond and that, as third-party beneficiaries, Defendants were entitled to recover from Stanford.

The appellate court also rejected Stanford's argument that, because the DOE contract provides that any judgment against Stanford must be paid by funds from the United States Treasury, Stanford is entitled to sovereign immunity. In reaching its decision, the court noted that Stanford failed to cite a single case in which a private individual or entity was protected by sovereign immunity simply because federal funds would be used to satisfy the judgment. The court further noted that Stanford not only declined to argue that it was acting as an agent of the federal government, but that it expressly maintained that "the existence or nonexistence of an agency relationship is irrelevant." Stipulation Re Facts and Documents, Ex. 8 at 6.

On January 20, 1999, the California Supreme Court denied Stanford's petition for review. Stanford did not file a petition for a writ of certiorari with the United States Supreme Court.

On February 17, 1999, Stanford filed its complaint in this Court, seeking declaratory and permanent injunctive relief to bar enforcement of the State court judgment.

## DISCUSSION

### 1. Defendants' Motions to Dismiss

#### A. Rule 12(b)(1)

Dismissal is appropriate under Rule 12(b)(1) when the district court lacks subject matter jurisdiction over the claim. Fed.R.Civ.P. 12(b)(1). Federal subject matter jurisdiction must exist at the time the action is commenced. *See Morongo Band of Mission Indians v. California State Board of Equalization,* 858 F.2d 1376, 1380 (9th Cir.1988), *cert. denied,* 488 U.S. 1006, 109 S.Ct. 787, 102 L.Ed.2d 779 (1989). A Rule 12(b)(1) motion may either attack the sufficiency of the pleadings to establish federal jurisdiction, or allege an actual lack of jurisdiction which exists despite the formal sufficiency of the complaint. *See Thornhill Publishing Co., Inc. v. General Tel. & Electronics Corp.,* 594 F.2d 730, 733 (9th Cir.1979); *Roberts v. Corrothers,* 812 F.2d 1173, 1177 (9th Cir. 1987).

Subject matter jurisdiction is a threshold issue which goes to the power of the court to hear the case. Therefore, a Rule 12(b)(1) challenge should be decided before other grounds for dismissal, because they will become moot if dismissal is granted. *See Alvares v. Erickson,* 514 F.2d 156, 160 (9th Cir.), *cert. denied,* 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 106 (1975); *see also* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1350, 210 (2d ed.1990).

A federal court is presumed to lack subject matter jurisdiction until the contrary affirmatively appears. *See Stock West, Inc. v. Confederated Tribes,* 873 F.2d 1221, 1225 (9th Cir.1989). An action should not be dismissed for lack of subject matter jurisdiction without giving the plaintiff an opportunity to amend unless it is clear that the jurisdictional deficiency cannot be cured by amendment. *See May Dept. Store v. Graphic Process Co.,* 637 F.2d 1211, 1216 (9th Cir.1980).

### B. The *Rooker/Feldman* Doctrine Bars Stanford's Claims

#### a. The *Rooker/Feldman* Doctrine

■ Federal review of a final judgment by a State court is governed by Title 28 U.S.C. § 1257, which states, in relevant part,

> Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States.

28 U.S.C. § 1257. United States district courts generally do not have jurisdiction over challenges to State court decisions, even if those challenges raise federal constitutional issues. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476, 482–83, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Elks National Foundation v. Weber*, 942 F.2d 1480, 1483–84 (9th Cir.1991), *cert. denied*, 505 U.S. 1206, 112 S.Ct. 2995, 120 L.Ed.2d 872 (1992). "If [the State] court erroneously determines a federal question, recourse does not lie to the United States District Court or to the United States Court of Appeals. Jurisdiction to review the judgments of state courts lies exclusively in the United States Supreme Court." *Exxon Shipping Co. v. Airport Depot Diner, Inc.*, 120 F.3d 166, 169 (9th Cir.1997); *see also Bates v. Jones*, 131 F.3d 843, 856–67 (9th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1302, 140 L.Ed.2d 468 (1998); *Worldwide Church of God v. McNair*, 805 F.2d 888, 890–91 (9th Cir.1986).

The Supreme Court has held that, if federal claims are "inextricably intertwined" with the State court's ruling, the district court has no subject matter over such claims, even if the plaintiff failed to raise the federal claims in the State court proceedings. *Feldman*, 460 U.S. at 482 n. 16, 103 S.Ct. 1303 ("By failing to raise his claims in state court a plaintiff may forfeit his right to obtain review of the state-court decision in any federal court"); *see also Dubinka v. Judges of the Superior Court*, 23 F.3d 218, 221–22 (9th Cir.1994).

In the present case, Stanford's claim that it is entitled to sovereign immunity was expressly raised, addressed, and rejected by both the State Superior Court and the State Court of Appeal. *See* Stipulation Re Facts and Documents, Ex. 6 at 8; Ex. 8 at 3–6. Although it appears that Stanford did not raise the specific claim that it is the alter ego or agent of the federal government, this claim is "inextricably intertwined" with the State courts' rulings that Stanford is not entitled to sovereign immunity. *See Feldman*, 460 U.S. at 482 n. 16, 103 S.Ct. 1303. Moreover, as the appellate court noted, Stanford expressly maintained that any agency relationship was irrelevant to its claim for sovereign immunity.

In addition, Defendants obtained a final judgment in the State courts. The superior court entered judgment in favor of Defendants after conducting a bench trial. *See* Stipulation Re Facts and Documents, Ex. 6 at 14–15. The California Court of Appeal reversed the award of attorneys' fees and affirmed the judgment in all other respects. *See id.* Ex. 8 at 15. The California Supreme Court denied Stanford's petition for review. *See id.* Ex. 9. Thus, the State court proceeding indisputably ended in a final judgment.

In the instant case, Stanford expressly seeks an injunction to prevent enforcement of the State court judgment that it contends is invalid. Because Stanford thus concedes that it seeks review of issues

litigated in State court and subject to a final State court judgment, the *Rooker/Feldman* doctrine applies and this Court lacks jurisdiction to hear Stanford's claims, unless the case falls under the legal nullity exception.

b. The Legal Nullity/Void *Ab Initio* Exception

 Under the *Rooker/Feldman* doctrine, district courts cannot review a State court's decision even if the State court erred in its determination that it had jurisdiction over the claims. *See Olson Farms, Inc. v. Barbosa*, 134 F.3d 933, 936–37 (9th Cir.1998). Moreover, the *Rooker/Feldman* doctrine applies even if the State court improperly exercises jurisdiction over a matter in which one party argues that the claims are subject to exclusive, original federal subject matter jurisdiction. *See Olson*, 134 F.3d at 935–37. In *Olson*, California's Agricultural Labor Relations Board (ALRB) found that Olson had violated the Agricultural Labor Relations Act. On appeal, after considering the factual circumstances of the case, the State court of appeal rejected Olson's affirmative defense that the ALRB lacked jurisdiction over the matter because the claims against Olson were preempted by the National Labor Relations Act (NLRA). *See id.* at 935–37. The Ninth Circuit agreed with the district court that, even though the National Labor Relations Board (NLRB) has exclusive, original subject matter jurisdiction over matters subject to regulation under Sections 7 and 8 of the NLRA, the State court's determination that it had jurisdiction was not subject to collateral attack in federal court. *See id.* at 936–37; *see also San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 244–45, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959) (holding that a State law claim which is arguably subject to regulation under Sections 7 or 8 of the NLRA is preempted and falls within the *exclusive* jurisdiction of the NLRB).

Moreover, in *Olson*, the issue of subject matter jurisdiction was actually adjudicated and involved factual determinations by the State court. *See Olson*, 134 F.3d at 936 ("Purely and simply, Olson submitted the jurisdictional claim to the state courts and now seeks to have the federal courts adjudicate that selfsame jurisdictional claim. That we cannot do. Olson's remedy was to seek review in the United States Supreme Court; that was its only federal remedy"). Because the *Rooker/Feldman* doctrine derives not only from principles of federalism, *see, e.g., Howlett v. Rose*, 496 U.S. 356, 372–73, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990) (principles underlying *Rooker/Feldman* doctrine are "fundamental to a system of federalism"), but also from interests in comity, *see, e.g., Martin v. Wilks*, 490 U.S. 755, 783, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989) (*Rooker/Feldman* doctrine protects "interest in comity between courts"), federal courts must afford a degree of deference to a State court decision which expressly adjudicates a claim of lack of jurisdiction, particularly when such a determination requires the State court to exercise its discretion in resolving factual issues. *See also Durfee v. Duke*, 375 U.S. 106, 111, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963) (federal courts must give full faith and credit to State court jurisdictional judgments when "litigated and finally decided" by that court). Thus, the State court had the power to make factual determinations necessary to ascertain whether it had jurisdiction over a matter that was arguably subject to exclusive federal subject matter jurisdiction.

Although the *Olson* court held that review of the State court's decision regarding subject matter jurisdiction could be had only in the United States Supreme Court, the court noted, "We would not have taken that view had we thought that the state court decision would be absolutely void and, therefore, subject to collateral attack in a proceeding in the district court." *Olson*, 134 F.3d at 937. Stanford relies on two cases in which the Ninth Circuit has applied the legal nullity exception.

In *Gruntz v. County of Los Angeles,* 166 F.3d 1020, 1026–27, *amended by,* 177 F.3d 728, 1999 WL 311981 (9th Cir.1999),[2] the Ninth Circuit held that a federal bankruptcy court had jurisdiction to determine whether a final State court judgment violated an automatic stay and, as a result, was void *ab initio,* or void from the inception. In *Gruntz,* the State court simply assumed that it had jurisdiction without making any factual findings and the bankruptcy court held that it lacked jurisdiction to review the State court's decision. *See Gruntz,* 177 F.3d 728, 1999 WL 311981 at *10. The Ninth Circuit found that the State court judgment was probably void *ab initio,* because federal bankruptcy law grants exclusive original jurisdiction to the federal courts and precludes any State court proceedings which violate the automatic stay. In so deciding, the court quoted the Bankruptcy Appellate Panel's statement that a "nonbankruptcy court has jurisdiction to determine whether the stay applies, but, since the bankruptcy court has exclusive authority to vacate or modify the stay, any action by the nonbankruptcy court that results from too narrow a construction of the automatic stay risks being treated as void ab initio." *Id.* (quoting *Schwartz v. United States,* 954 F.2d 569, 573–75 (9th Cir.1992)). Thus, the State court, without making any explicit finding that it had jurisdiction, assumed jurisdiction over a case that appeared to be within the scope of the automatic stay. In such circumstances, the Ninth Circuit held, the bankruptcy court had jurisdiction to review the State court judgment to determine whether it was void.

In *United States v. Alpine Land & Reservoir Co.,* 174 F.3d 1007, 1009–10 (9th Cir.1999), the Nevada State court ruled that it had jurisdiction over a tract of land, which had previously been the subject of federal litigation. The State Engineer filed suit in federal district court, collater-

ally attacking the State court's ruling. The district court held that it had jurisdiction and enjoined enforcement of the State court judgment. *Id.* at 1010. The Ninth Circuit relied on the "well-established proposition that the first court to gain jurisdiction over a res exercises exclusive jurisdiction over an action involving that res," *id.* at 1013, to hold that, because the matter involved in rem jurisdiction and because the federal courts had previously exercised jurisdiction over the disputed tract of land, the district court had exclusive jurisdiction over the matter and had jurisdiction over collateral attacks on the State court judgment. *Id.* at 1011, 1013, 1015–16.

■ Stanford's position depends largely on its contention that *Gruntz* and *Alpine Land* stand for the proposition that federal courts may hear collateral attacks on any State court judgment relating to a matter arguably within the province of exclusive federal jurisdiction. However, in *Olson,* which involved a plausible claim that the State court had usurped the NLRB's exclusive jurisdiction over federal labor law, the Ninth Circuit held otherwise. *See Olson,* 134 F.3d at 936–37. *Olson,* which was neither expressly nor impliedly overruled by either *Gruntz* or *Alpine Land,* stands for the general rule that federal courts lack jurisdiction to hear collateral attacks on State court judgments even if the State court erroneously determines that there is no exclusive federal jurisdiction over the case. *Gruntz* created a limited exception to this rule for cases involving a State court's assertion of jurisdiction in violation of an automatic stay in regard to a bankruptcy estate. *See Gruntz,* 177 F.3d 728, 1999 WL 311981 at *9–11. *Alpine Land* similarly created a narrow exception for cases in which the federal courts exercised actual and exclusive jurisdiction over a res prior to the initiation of proceedings in State court. *See Alpine Land,* 174 F.3d at 1009–10, 1013. Because Stanford's claim

---

**2.** The amended version of the *Gruntz* opinion retreats somewhat from the position taken in

the original opinion, on which Stanford relies.

that it is entitled to sovereign immunity is easily distinguishable from both cases involving an automatic stay in bankruptcy proceedings and cases involving prior federal jurisdiction over a res, the Court finds that the general rule, exemplified by *Olson* and the *Rooker/Feldman* doctrine, governs this action.

Moreover, as in *Olson,* and in contrast to *Gruntz,* the State court here made express factual findings regarding Stanford's status as a private entity and its relationship to the federal government and subsequently rejected Stanford's claim that it was entitled to sovereign immunity. The State court was faced with a suit which, on its face, involved a State law dispute between a group of private entities and Stanford, a private educational institution.[3] Until the State court determined whether or not Stanford was entitled to sovereign immunity, the State court not only had jurisdiction over the matter, but the lack of either any apparent federal subject matter jurisdiction or diversity jurisdiction precluded Defendants from bringing their claims against Stanford in federal court. Thus, contrary to Stanford's contention that the State court was "incompetent to determine its own jurisdiction" because sovereign immunity was at issue, the State court was not only empowered to adjudicate Stanford's sovereign immunity claim, it was required to resolve that claim.[4] As previously discussed, once the State court actually adjudicated the jurisdictional issue, even if it erred in finding that it had jurisdiction, Stanford's only recourse was to seek review of that decision at the United States Supreme Court. *See Olson,* 134 F.3d at 936–37; *see also Feldman,* 460 U.S. at 476, 482–83, 103 S.Ct. 1303; *Exxon Shipping,* 120 F.3d at 169.

Because the State court judgment is not void *ab initio,* the *Rooker/Feldman* doctrine is controlling and this Court lacks jurisdiction to hear Stanford's claims.[5] Accordingly, Defendants' motions to dismiss are granted.

### 2. Plaintiff's Motion for a Preliminary Injunction

Because the Court grants Defendants' motions to dismiss, Plaintiff's motion for a preliminary injunction is denied.

### CONCLUSION

For the foregoing reasons, Stanford's motion for a preliminary injunction (Docket # 5) is denied. Defendants' motions to dismiss (Docket # 3 and # 4) are granted. Stanford's claims against Defendants are dismissed with prejudice.

3. Indeed, in the State court action, the parties stipulated that "Stanford is a private educational institution authorized to exercise corporate powers and privileges by the State of California." Stipulation Re Facts and Documents, Ex. 4 at 3. Moreover, the State court noted that Stanford explicitly stated that any agency relationship between Stanford and the federal government was irrelevant to a determination of whether it was protected by sovereign immunity.

4. The Ninth Circuit's decision in *United States of America for the Use of Hillsdale Rock Co. v. Cortelyou & Cole, Inc.,* 581 F.2d 239, 243 (9th Cir.1978), does not render this inquiry a mere formality, as Stanford contends. In *Hillsdale,* neither the United States nor Stanford was a party to the action and the Ninth Circuit merely implied in dicta that Stanford, in its capacity as an M & O contractor operating SLAC, may be an agent of the federal government. *Id.*

5. Even if the Court had jurisdiction over Stanford's claims, Stanford has failed to present either binding authority or sufficient facts to compel either the State court or this Court to find that it is the agent of the federal government and thus entitled to sovereign immunity.