120 F.3d 166
 1997 A.M.C. 2599, 27 Envtl. L. Rep. 21,492,
97 Cal. Daily Op. Serv. 5527,
97 Daily Journal D.A.R. 8987
 EXXON SHIPPING CO., a Delaware Corporation; Exxon
Corporation, a New Jersey Corporation; Exxon
Pipeline Company, a Delaware
Corporation, Plaintiffs-Appellees,
v.
AIRPORT DEPOT DINER, INC.; Merle Aaker; Cipriana Abad;
Ricardo Abad, Jr.; Richard Abad, Sr.; Rosemarie C. Abad;
Conrado Abasta; W. Findlay Abbott; C.E. Abelogaard; David
Aberle; Florencia Abille; Ricardo Abille; Sagani Abille;
Alfredo Aboueid; Alred Aboured; Dennis Abrahamson; Lydia
Abrigo; Felipe Accaide; Sergio Acena, Jr.; Jamie Aczon;
Christina Adalin; Marilou Adalin; David L. Adams; Harley
Adams; Mark Adams; Todd Adams; Wayne Adams; Frank
Adkins; Marla Adkins, et al., Defendants-Appellants.
 No. 95-35819.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 17, 1996.
Decided July 14, 1997.
 
 1
 Brian B. O'Neill, Faegre & Benson, Minneapolis, MN, for defendants-appellants.
 
 
 2
 John F. Daum, Charles C. Lifland, O'Melveny & Myers, Los Angeles, CA, for plaintiffs-appellees.
 
 
 3
 Appeal from the United States District Court for the District of Alaska; H. Russel Holland, Chief Judge, Presiding. D.C. No. CV-91-00222-HRH.
 
 
 4
 Before: KOZINSKI and LEAVY, Circuit Judges, and SCHWARZER,* Senior District Judge.
 
 
 5
 SCHWARZER, Senior District Judge.
 
 
 6
 On this appeal we must decide whether the district court properly granted a declaratory judgment summarily adjudicating certain issues relating to claims against Exxon in a parallel federal proceeding and in hypothetical state court litigation.
 
 I.
 
 7
 In March 1989, the EXXON VALDEZ ran aground, causing a massive oil spill in Alaska territorial waters. Numerous commercial fishermen, local business owners, state and local governments, and Native American corporations, among others, brought suit against Exxon in state and federal court, seeking relief on various federal and state law theories.[1] The federal actions were eventually consolidated in a single action, In re Exxon Valdez, Case No. 89-95, while the state court actions were consolidated in Alaska Superior Court.
 
 
 8
 In May 1991, Exxon filed this declaratory relief and interpleader action against some 4,000 plaintiffs alleged to have asserted claims against Exxon in state and federal court, seeking a judgment that would bind plaintiffs in federal and state court alike. The complaint alleged federal question, diversity and maritime jurisdiction, 28 U.S.C. §§ 1331, 1332, 1346. The plaintiffs moved to dismiss or stay the action, urging the district court to defer to the state court proceedings that had already been in progress for two years. The district court dismissed the interpleader claim, but declined to exercise its discretion to dismiss the declaratory relief action. It had previously determined, in the consolidated federal action, that federal maritime law preempted state law remedies for the spill. The state court, meanwhile, had indicated that it might ultimately decide to the contrary. The district court found this potential conflict in decisions to be the dispositive factor in favor of exercising jurisdiction:
 
 
 9
 While plaintiffs' choice of forum is an important consideration in many situations, the plaintiffs before the state court have no right to have state law applied to maritime claims. This court has a duty to protect the uniformity of federal maritime law....
 
 
 10
 ... Exxon's complaint, while certainly reactive and perhaps duplicative, is an appropriate response to the state court's indicated refusal to apply federal maritime law.
 
 
 11
 Case No. A-91-222, Order dated November 13, 1992, 10, 11. The court then stayed the declaratory relief action pending development of a case management plan in the consolidated federal action.
 
 
 12
 Subsequent developments, however, largely obviated the need for declaratory relief. A series of removals by one of Exxon's codefendants had brought nearly all of the state court actions into the consolidated federal action.[2] All of the plaintiffs (the defendants in this declaratory relief action) were before the federal court in the consolidated action, and the declaratory relief action, still stayed, became redundant.
 
 
 13
 In the consolidated action, the district court granted several motions for summary judgment, largely based on the rule of Robins Dry Dock & Repair Co. v. Flint, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927), narrowing the issues for trial.[3] The parties then submitted the remaining issues for trial, subject to a stipulation that the trial's results would be conclusive on the parties as to those issues, even if actions were eventually remanded to state court. Such a stipulation was motivated by concern that some of the removed actions might yet be remanded. In Eyak Native Village v. Exxon Corp., 25 F.3d 773 (9th Cir.), cert. denied, 513 U.S. 943, 115 S.Ct. 351, 130 L.Ed.2d 307 (1994), this court had held that those actions had not been timely removed and that the district court had erred in denying the motion to remand to state court. Id. at 783. On remand, however, the district court, on Exxon's motion, retained jurisdiction of those actions.
 
 
 14
 Exxon thus faced the possibility that on an appeal from a final judgment in the consolidated action, remand of the improperly removed actions would be ordered, with the consequence that on return of the actions to state court, the district court's summary judgment rulings would not be binding.[4] It therefore moved the court to lift the stay in the declaratory relief action and to grant a declaratory judgment determining that as to the 4,000 plaintiffs named, the summary judgment rulings in the consolidated action would control the disposition of their claims in federal and state court. Exxon argued that, because of the prospect of a remand to state court, "[f]ailure to enter such a declaratory judgment will put at risk much of the work that the Court has done, and will jeopardize the Court's efforts to assure uniform application of maritime law to all plaintiffs."
 
 
 15
 In granting Exxon's motion to lift the stay and for summary judgment in the declaratory relief action, the district court first noted its "impression that its decision to retain jurisdiction over the Eyak cases in [the consolidated case] renders the instant motion superfluous. Retaining jurisdiction over plaintiffs subject to the Eyak appeal means that those plaintiffs are bound by the maritime orders at issue herein." Case No. A-91-222, Order dated May 16, 1995, 5. The court nevertheless considered the possibility that some of the plaintiffs (in particular, the improperly removed Eyak plaintiffs) might eventually secure a remand, such that further state court proceedings would ensue. The district court, observing that the state court had decided that Robins Dry Dock did not apply to the claims of the municipal plaintiffs who had proceeded in state court, concluded that a declaratory judgment was necessary to ensure that federal law would apply to the issues, "whether before state or federal court...." Id. at 12.
 
 
 16
 Plaintiffs now appeal from the declaratory judgment. We have jurisdiction under 28 U.S.C. § 1291, and review the district court's exercise of discretion to issue declaratory relief for abuse of discretion. Wilton v. Seven Falls Co., 515 U.S. 277, 288, 115 S.Ct. 2137, 2144, 132 L.Ed.2d 214 (1995). Because the court abused its discretion in granting declaratory relief in these circumstances, we vacate the judgment and remand with direction to dismiss the action.
 
 II.
 
 17
 It should go without saying that a declaratory judgment action must serve some purpose in resolving a dispute. If the relief serves no purpose, or an illegitimate one, then the district court should not grant it.
 
 
 18
 The declaration here served no purpose with respect to most of the parties to this action. Most of the 4,000 plaintiffs were plaintiffs in the consolidated action, either originally or because their actions were properly removed without objection. As to these plaintiffs, declaratory relief could not assist in resolving their claims; those claims were already subject to the judgment in the consolidated action, and they had not questioned the binding effect of the summary judgment rulings. Given that they had lost on those issues in the consolidated action, and could obtain review of those orders on appeal from the final judgment, there was no need for the separate declaration.[5] The declaratory relief was, as the district court correctly characterized it, "superfluous." We have said that
 
 
 19
 when a trial court reaches the conclusion, as it did in this case, that judgment should be against the actor in the lawsuit, it would be an illusory act to grant a further declaration of rights.... A declaration of rights, after such conclusion, would have served no useful purpose. And it is an accepted principle that no declaration should be made, unless it serve a useful, practical purpose, or when no beneficial result would follow.
 
 
 20
 United States v. Jones, 176 F.2d 278, 280 (9th Cir.1949).[6]
 
 
 21
 If the sole purpose of the declaratory judgment action were to duplicate the litigation in the consolidated action pending before the same district judge, we doubt Exxon would have pursued it. Presumably, Exxon sought a declaratory judgment because of the possibility that the Eyak plaintiffs' actions would eventually be remanded to state court. See Case No. A-91-222, Order dated May 16, 1995, 6 ("Exxon further argues that the motion [is] directed at those plaintiffs who were in this court while [the summary judgment motions were litigated] and at those plaintiffs who were subject to the Eyak appeal."). It would provide insurance against the state court deciding the maritime issues less favorably than the district court. The state court had, in another case, held that the maritime rule of Robins Dry Dock did not preclude state law claims for relief, while the district court held that maritime law was exclusive. The district judge considered the state court's contrary ruling on the maritime issue (and the possibility that it might apply its contrary ruling to any of the parties to the declaratory relief action) to be an important factor weighing in favor of relief:
 
 
 22
 The court respects state court Order No. 53, which held that Robins Dry Dock would not apply to the claims of municipalities. For the purposes of the instant motion, however, state court Order No. 53 is inconsequential. This court is convinced that uniform federal maritime law must apply in both state and federal court. State court Order No. 53 does not alter the fact that the pertinent issues, whether before state or federal court, are governed by federal maritime law, not state law.
 
 
 23
 Under Chamberlain, it is appropriate for the court to enter the declaratory judgment. The issues are governed by federal law ...
 
 
 24
 Case No. A-91-222, order dated May 16, 1995, 11-12.
 
 
 25
 Whatever may be the merit of having "uniform federal maritime law ... apply in both state and federal court," to all proceedings arising out of the EXXON VALDEZ oil spill (an issue we do not decide), the district court abused its discretion in granting declaratory relief to preempt a ruling on these federal law issues by the state court. If it is ultimately determined that the Eyak plaintiffs belong in state court, then they are entitled to a decision of that court on the issues in controversy. If that court erroneously determines a federal question, recourse does not lie to the United States District Court or to the United States Courts of Appeals. Jurisdiction to review the judgments of state courts lies exclusively in the United States Supreme Court. 28 U.S.C. § 1257; see District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476, 103 S.Ct. 1303, 1311, 75 L.Ed.2d 206 (1983); Atlantic Coast Line R.R. Co. v. Eng'rs, 398 U.S. 281, 296, 90 S.Ct. 1739, 1747, 26 L.Ed.2d 234 (1970) ("If the union was adversely affected by the state court's decision, it was free to seek vindication of its federal right in the Florida appellate courts and ultimately, if necessary, in this Court."); Worldwide Church of God v. McNair, 805 F.2d 888, 891 (9th Cir.1986) (no federal court jurisdiction to enjoin state court defamation verdict). Declaratory relief is not authorized so that lower federal courts can sit in judgment over state courts, and it is not a substitute for removal. As this court has said,
 
 
 26
 The wholesome purposes of declaratory acts would be aborted by its use as an instrument of procedural fencing either to secure delay or to choose a forum. It was not intended by the act to enable a party to obtain a change of tribunal and thus accomplish in a particular case what could not be accomplished under the removal act, and such would be the result in the instant case.
 
 
 27
 H.J. Heinz Co. v. Owens, 189 F.2d 505, 508 (9th Cir.1951), cert. denied, 342 U.S. 905, 72 S.Ct. 294, 96 L.Ed. 677 (1952) (quoting American Auto. Ins. Co. v. Freundt, 103 F.2d 613, 617 (7th Cir.1939)).
 
 
 28
 In Public Serv. Comm'n v. Wycoff Co., 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952), the Supreme Court, in words relevant to this action, addressed the federalism concerns raised by declaratory judgments preempting rulings by state agencies. As the Court put it:
 
 
 29
 Declaratory proceedings in the federal courts against state officials must be decided with regard for the implications of our federal system.... Anticipatory judgment by a federal court to frustrate action by a state agency is even less tolerable to our federalism.... The procedures of review usually afford ample protection to a carrier whose federal rights are actually invaded.... State courts are bound equally with the federal courts by the Federal Constitution and laws.
 
 
 30
 Id. at 247-48, 73 S.Ct. at 242-43; see also Howlett v. Rose, 496 U.S. 356, 369 n. 16, 110 S.Ct. 2430, 2439, 110 L.Ed.2d 332 (1990) ("The Supremacy Clause [does not] operate[ ] as a constraint on the activity of state-court judges ... [but] rather ... as a rule of decision."). Contrary to the district judge's view, the federal court has no overriding "duty to protect the uniformity of federal maritime law" from the rulings of a state court judge; indeed, it has no right to do so. The district judge's confidence in the rightness of his ruling does not justify preempting the power of the state court to decide. See also Shell Oil Co. v. Frusetta, 290 F.2d 689, 694 (9th Cir.1961) (declaratory relief not available because of "fears" that state court will not provide fair trial; Congress provided for protection through removal statute, not Declaratory Judgment Act).[7]
 
 III.
 
 31
 Because the district court abused its discretion in granting declaratory relief in these circumstances, we VACATE the judgment and REMAND with directions to DISMISS the action.
 
 
 
 *
 Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 The three plaintiffs in this action, defendants in the underlying federal and state court actions, are Exxon Shipping Company, Exxon Corporation, and Exxon Pipeline Company. For convenience, we will refer to the three as "Exxon." Consistent with the practice of the district court and the parties, we will refer to the 4,000 defendants in this action, all plaintiffs in the underlying lawsuits, as "plaintiffs."
 
 
 [2]
 A few cases-involving the claims of certain municipal and Native corporations-remained in state court and eventually went to trial there. These state court plaintiffs were dismissed from the declaratory relief action on Exxon's motion, and the declaratory judgment did not apply to them. Case No. A-91-222, Order dated May 16, 1995, 7 fn.9
 
 
 [3]
 In a series of summary judgment orders, the court dismissed claims for damages to the subsistence way of life, hedonic or emotional distress damages, price diminishment in fisheries that were not oiled, diminished value of limited entry fishing permits or fishing vessels absent a sale of the permit or vessel, damages to unoiled land, diminution of market value owing to fear or stigma, the claims of seafood wholesalers, processors, cannery employees, and tender boat operators, and claims of plaintiffs who are not commercial fishermen or Native subsistence harvesters, except to the extent that their losses result from physical injury to a proprietary interest caused by the spill
 
 
 [4]
 The appeal from the judgment in the consolidated action, Case No. 89-95, has yet to be argued
 
 
 [5]
 This is not to say that declaratory relief is inappropriately granted when it is requested in the same case as the coercive relief. See Fed.R.Civ.P. 57
 
 
 [6]
 The granting of the declaratory judgment in this action was an abuse of discretion for the additional reason that it would thwart the policy against splitting of claims for purposes of appeal. The losing parties in this action would have to appeal the merits of the underlying summary judgment rulings, bringing before this court the same issue that would come before it on appeal from the final judgment in the consolidated action
 
 
 [7]
 In the analogous situation involving the bar against federal court injunctions of state court litigation, the Supreme Court explained:
 [F]rom the beginning we have had in this country two essentially separate legal systems.... Understandably this dual court system was bound to lead to conflicts and frictions. Litigants who foresaw the possibility of more favorable treatment in one or the other system would predictably hasten to invoke the powers of whichever court it was believed would present the best chance of success. Obviously this dual system could not function if state and federal courts were free to fight each other for control of a particular case. Thus, in order to make the dual system work and "to prevent needless friction between state and federal courts," it was necessary to work out lines of demarcation between the two systems.
 Atlantic Coast Line R.R. Co., 398 U.S. at 285, 90 S.Ct. at 1742 (citations omitted).