**UNITED ARTISTS THEATRE CIRCUIT, INC., a Maryland corporation, Plaintiff,**

v.

**The FEDERAL COMMUNICATIONS COMMISSION; William E. Kennard, an individual, in his capacity as Chairman of the Federal Communications Commission; ESI Ergonomic Solutions, L.L.C., an Arizona limited liability corporation, Defendants.**

No. Civ 00–274–PHX–RCB.

United States District Court, D. Arizona.

Aug. 17, 2000.

Mary Ellen Simonson, Keith Beauchamp, Robert Gerald Schaffer, Lewis & Roca LLP, Phoenix, AZ, for United Artists Theatre Circuit.

Theodore C. Hirt, Karyn A. Temple, Washington, DC, for Federal Communications Commission and William E. Kennard.

Edward Moomjian, II, Chandler, Tullar, Udall & Redhair, Tucson, AZ, Christopher Alan LaVoy, LaVoy & Chernoff, PC, Phoenix, AZ, for ESI Ergonomic Solutions LLC.

## ORDER

BROOMFIELD, Senior District Judge.

Defendant ESI Ergonomic Solutions, L.L.C. (ESI), has moved the court to dismiss the complaint against it. ESI contends that the court lacks subject matter jurisdiction to adjudicate the claims of United Artists Theatre Circuit, Inc. (United Artists) for declaratory relief. Alternatively, in the event that the court has subject matter jurisdiction, ESI urges the court to abstain from exercising it in light of parallel proceedings between ESI and United Artists in the Superior Court in Maricopa County. The federal Defendants answered the complaint with a request that the court dismiss it, but they have not submitted a motion to dismiss or joined in ESI's motion. The court heard oral argument on ESI's motion on June 26, 2000. Having carefully considered the matter, the court now rules.

## BACKGROUND

United Artists petitions the court for a declaration that certain provisions of the Telephone Consumer Protection Act (TCPA) violate the First Amendment. As United Artists explains, the TCPA was enacted in 1991 and is codified at 47 U.S.C. § 227. Among other restrictions on the commercial use of telephone equipment, the statute makes it unlawful "to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C.A. § 227(b)(1)(C) (West Supp. 1999). An unsolicited advertisement is "any material advertising the commercial availability or quality of any property, goods or services which is transmitted to any person without that person's prior express invitation or permission." *Id.* § 227(a)(4). The statute contemplates a variety of actions, including a private right of action in state courts for recipients of unsolicited faxes. *Id.* § 227(b)(3).

A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—

(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this section or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

*Id.* § 227(b)(3). Actions by state attorneys general are also authorized. *See id.* § 227(f).

United Artists contends that it learned of the statute only recently. In 1999, unaware of the TCPA, United Artists hired American Blast Fax, Inc. (Blast Fax) to send 90,000 one-page advertisements to businesses in the Phoenix area. Compl. ¶¶ 7, 9. The advertisement offered movie tickets at discount prices. Response at 2–3. About 179 businesses responded and bought tickets, another 89,820–odd businesses did not respond, and one, ESI, filed suit in the Superior Court in Maricopa County against United Artists and Blast Fax for violating the TCPA. ESI seeks to incorporate the other 89,999 recipients as members of a plaintiff class; if the statutory penalty of $500 per fax were imposed, statutory damages would amount to $45 million. If the penalty were tripled upon a finding that United Artists' violation was willful—something that United Artists denies—United Artists' liability would inflate to $135 million.

While in the midst of litigating the state court action, on February 14, 2000, United Artists filed a complaint in this court seeking a declaration that 47 U.S.C. § 227(b) is unconstitutional, and a permanent injunction against efforts by the FCC and private parties to enforce the statute against "purely intrastate faxing." Compl. at 6. In moving to dismiss the federal complaint, ESI contends that United Artists' complaint reveals no justiciable controversy between United Artists and a private party like itself, nor is there an independent basis for federal jurisdiction. It also argues that comity requires federal abstention.

During briefing on ESI's motion to dismiss in this court, proceedings in the Superior Court have gone forward. As a defendant in the state court action, United Artists filed a series of dispositive motions, notably two motions for summary judgment challenging the constitutionality of the TCPA.[1] Based on the papers submitted to that point, Judge Norman J. Davis was not persuaded that the TCPA is unconstitutional. "Nor does this Court find that the TCPA embodies apparent constitutional violations of either the United States Constitution or the Arizona Constitution at this point." He denied the summary judgment motions, as well as the other pending dispositive motions. *See* Reply, Ex. 1 (Order of May 5, 2000).

From the order, the nature of the constitutional theories advanced by United Artists and rejected by Judge Davis is not clear. According to United Artists, summary judgment was sought on the ground that TCPA suits are not "permitted" under Arizona law because they violate the free speech and due process clauses of the Arizona Constitution. Response at 3. Writing

---

1. At oral argument, counsel for the parties agreed that the dispositive motions raising constitutional theories were filed in the Superior Court action prior to the filing of the complaint at issue here.

before Judge Davis's order issued, United Artists here maintained that the federal constitutional issues raised in this action have not been presented to the state court. *See id.* In reply, ESI was advantaged by having the order, from which it argues that United Artists' position is not tenable:

Every constitutional issue that United Artists has raised in this action either has been, or can be, raised in the state court proceeding. Nor can it be determined at this point what defenses, constitutional or otherwise, United Artists will actually raise in the state court proceeding because it has yet to file an answer in that action framing its defenses. Moreover, the First Amendment and Due Process defenses it asserts here are analytically subsumed within the parallel provisions of the Arizona Constitution that it has already asserted by motion in the state court proceeding (by virtue of the Supremacy Clause, and decisional law in Arizona, these provisions of the Arizona Constitution are necessarily as broad as their federal counterparts). Recognizing this, in his recent ruling denying United Artists' constitutional motions, Judge Davis analyzed both the state and federal constitutions. . . .

Reply at 4–5. It is at this juncture that the court confronts ESI's challenge to federal subject matter jurisdiction and its suggestion to abstain.

## DISCUSSION

■ When presented with a motion to dismiss for lack of subject matter jurisdiction and on other grounds, courts generally take up the subject matter jurisdiction issue first, because its disposition may moot other issues. "Questions of jurisdiction, of course, should be given priority— since if there is no jurisdiction there is no authority to sit in judgment of anything else." *Vermont Agency of Natural Resources v. United States ex rel. Stevens,*

529 U.S. 765, 120 S.Ct. 1858, 1865, 146 L.Ed.2d 836 (2000); *see generally* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1350 (2d ed.1990 and Supp.1999). Subject matter jurisdiction is an issue logically prior to the propriety of abstention. "Only after a court is satisfied that standing and the other jurisdictional prerequisites are met may it determine, within its discretion, whether to abstain." *City of South Lake Tahoe v. Cal. Regional Planning Agency,* 625 F.2d 231, 233 (9th Cir.1980).

### A. Subject Matter Jurisdiction

■ A motion to dismiss for lack of subject matter jurisdiction is analyzed under Fed.R.Civ.P. 12(b)(1). Like other motions to dismiss, complaints are construed broadly and the non-moving party is entitled to all reasonable inferences that can be drawn in its favor. *Smith v. Gross,* 604 F.2d 639, 641 n. 1 (9th Cir.1979). All uncontested factual allegations are accepted as true. *Doe v. Schachter,* 804 F.Supp. 53, 57 (N.D.Cal.1992). The court's review is not restricted to the scope of the pleadings, but may extend to evidence offered by the parties to resolve factual disputes going to the jurisdictional issue. *McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir.1988). The burden of proof on a Rule 12(b)(1) motion is on the party asserting jurisdiction. *Ashoff v. City of Ukiah,* 130 F.3d 409, 410 (9th Cir.1997).

■ The Declaratory Judgment Act, 28 U.S.C. § 2201, is not a jurisdictional statute. *See Fiedler v. Clark,* 714 F.2d 77, 79 (9th Cir.1983). Federal jurisdiction must exist independently. To establish jurisdiction, federal declaratory judgment actions must satisfy the well-pleaded complaint rule, which screens complaints that anticipate defenses based on federal law. *See Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 673–74, 70 S.Ct. 876, 94

L.Ed. 1194 (1950). Since declaratory actions invert actions to enforce rights, the well-pleaded complaint analysis ascertains whether the declaratory judgment defendant could have brought a coercive action arising under federal law. *Standard Ins. Co. v. Saklad,* 127 F.3d 1179, 1180 (9th Cir.1997) (quoting *Janakes v. United States Postal Service,* 768 F.2d 1091, 1093 (9th Cir.1985)); *see generally* 15 James Wm. Moore, *Moore's Federal Practice* § 103.44[1] at 103–67 (3rd. ed.1997).

 The Declaratory Judgment Act gives district courts authority to accept only those actions that comport with the statute's purposes by making jurisdiction discretionary and not mandatory. *See Wilton v. Seven Falls Co.,* 515 U.S. 277, 288, 115 S.Ct. 2137, 2143, 132 L.Ed.2d 214 (1995); *see also Natural Resources Defense Council v. U.S. EPA,* 966 F.2d 1292, 1299 (9th Cir.1992). The Declaratory Judgment Act enables federal courts to "grant a new form of relief to qualifying litigants" who want to ascertain their liability for actions already taken or presently contemplated. *Wilton,* 115 S.Ct. at 2143. Declaratory actions are intended to serve the salutary purpose of avoiding "multiplicity of actions by affording an adequate, expedient, and inexpensive means for declaring in one action the right and obligations of litigants." *United Food & Commercial Workers v. Food Employers Council, Inc.,* 827 F.2d 519, 524 (9th Cir. 1987) (quotation omitted). "It is not the function of the Declaratory Judgment Act to allow disputes arising in the course of state court litigation to be argued in the federal courts instead." *Shell Oil Co. v. Frusetta,* 290 F.2d 689, 692 (9th Cir.1961); *see also American National Fire Ins. Co.*

*v. Hungerford,* 53 F.3d 1012, 1018 (9th Cir.1995) (no reason why relief could not be better sought in state declaratory judgment action), overruled on other grounds in *Government Employees Ins. Co. v. Dizol,* 133 F.3d 1220 (9th Cir.1998) (en banc); *see generally* 10B Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice & Procedure* § 2758 at 519–21 (3d ed.1998). Where the same issues are under consideration by another court, discretionary refusal to accept jurisdiction of the declaratory action may be appropriate. *Fireman's Fund Ins. Co. v. Ignacio,* 860 F.2d 353 (9th Cir.1988), abrogated on other grounds by *Wilton,* 115 S.Ct. at 2144.

 United Artists asserts that federal question jurisdiction exists in its suit against ESI because it challenges the validity of a federal statute under the United States Constitution, citing *Moore's Federal Practice, supra,* § 103.32[1] at 1054.[2] Response at 4. What United Artists' statement purporting to align its complaint with other constitutional challenges ignores is the inverted nature of its declaratory cause of action. The problem with its assumption that its case is analogous to other facial challenges is that federal subject matter jurisdiction for declaratory judgment actions is predicated on the federal jurisdiction of the suit anticipated. *See United Food & Commercial Workers,* 827 F.2d at 523.

If the cause of action, which the declaratory defendant threatens to assert, does not itself involve a claim under federal law, it is doubtful if a federal court may entertain an action for a declaratory judgment establishing a defense to that claim. This is dubious even though the

---

**2.** The treatise relies on *Action for Children's Television v. F.C.C.,* 59 F.3d 1249, 1256 (D.C.Cir.1995) ("Because a facial challenge to the constitutionality of a federal statute raises a federal question, the district court would

ordinarily have jurisdiction under 28 U.S.C. § 1331."). Clearly, this rule presupposes that the party making the facial claim has a cause of action, or a vehicle.

declaratory complaint sets forth a claim of federal right, if that right is in reality in the nature of a defense to a threatened cause of action.

*Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 248–49, 73 S.Ct. 236, 242–43, 97 L.Ed. 291 (1952). While United Artists asserts First Amendment rights, it seeks to strike down a statute under which it faces significant liability in another litigation. Thus, the constitutional question United Artists poses with respect to the private right of action under the TCPA must be recognized as a defense. Only if ESI's suit in the state court under 47 U.S.C. § 227(b) is justiciable in federal court will federal subject matter jurisdiction exist for United Artists' defensive declaratory action.

That question has been conclusively answered to the negative in the Ninth Circuit. *See Murphey v. Lanier*, 204 F.3d 911, 915 (9th Cir.2000).[3] The text of the TCPA does not specifically authorize federal jurisdiction over private actions. *See International Science & Tech. Institute v. Inacom Comm.*, 106 F.3d 1146 (4th Cir. 1997); *Chair King, Inc. v. Houston Cellular Corp.*, 131 F.3d 507, 509 (5th Cir.1997). Nor does an interpretation of "the whole law, its object, and its policy." *ErieNet, Inc. v. Velocity Net, Inc.*, 156 F.3d 513, 516 (3rd Cir.1998). "[T]he mere need for federal legislation and provision of remedies does not give a right of access to a federal forum." *Id.* at 517.

▮▮▮▮ In the absence of an express jurisdictional grant to the federal courts in the statute, federal jurisdiction over private TCPA actions cannot alternatively be obtained under the general federal question jurisdiction statute:

It is true that, as a general matter, a cause of action created by federal law will properly be brought in the district courts. But "despite the usual reliability of the principle that a suit arises under the law that creates the cause of action, the Supreme Court has sometimes found that formally federal causes of action were not properly brought under federal-question jurisdiction."

. . . . .

We have similarly concluded that Congress intended that private TCPA cases be litigated in state courts, if the state consents.

*International Science*, 106 F.3d at 1154 (quoting *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 814 n. 2, 106 S.Ct. 3229, 3235 n. 2, 92 L.Ed.2d 650 (1986)); *accord Foxhall Realty Law Offices v. Telecommunications Premium Services, Ltd.*, 156 F.3d 432, 436 (2d Cir. 1998) (it is enough that Congress intended to assign private rights of action exclusively to courts other than the federal district courts; a specific carve-out prohibiting general federal question jurisdiction is unnecessary). By virtue of a specific assignment of jurisdiction to state courts, Congress negates district court jurisdiction under § 1331. *ErieNet*, 156 F.3d at 519.

The legislative history, and particularly the statement of the bill's sponsor, Senator Ernest F. Hollings, is useful in confirming a congressional intent to limit private TCPA actions to state courts:

The substitute bill contains a private right-of-action provision that will make it easier for consumers to recover damages from receiving these computerized calls. The provision would allow consumers to bring an action in State court

---

3. "We join the Second, Third, Fourth, Fifth and Eleventh Circuits in the somewhat unusual conclusion that state courts have exclusive jurisdiction over a cause of action created by a federal statute, the Telephone Consumer Protection Act of 1991." *Murphey*, 204 F.3d at 915 (quotation omitted).

against any entity that violates the bill. The bill does not, because of constitutional constraints, dictate to the States which court in each State shall be the proper venue for such an action, as this is a matter for State legislators to determine. Nevertheless, it is my hope that States will make it as easy as possible for consumers to bring such actions, preferably in small claims court....

Small claims court or a similar court would allow the consumer to appear before the court without an attorney. The amount of damages in this legislation is set to be fair to both the consumer and the telemarketer. However, it would defeat the purposes of the bill if the attorneys' costs to consumers of bringing an action were greater than the potential damages. I thus expect that the States will act reasonably in permitting their citizens to go to court to enforce this bill.

*International Science*, 106 F.3d at 1152–53 (quoting 137 Cong.Rec. S16205–06 (daily ed. Nov. 7, 1991) (statement of Sen. Hollings)). The statute sharpens the effectiveness of state telemarketing regulations, which had been blunted by telemarketers' resort to interstate operations. *See* 47 U.S.C. § 227, Congressional finding No. 7.

In addition to textual and legislative-intent arguments, two constitutional theories have been advanced by various TCPA plaintiffs in favor of finding federal jurisdiction: first, that exclusive state jurisdiction would result in an equal protection violation, and second, that exclusive state jurisdiction would impermissibly meddle in states' affairs, in violation of the Tenth Amendment. *See International Science,*

106 F.3d at 1156. These arguments have uniformly been rejected. *See id.* at 1157–58; *see also Murphey,* 204 F.3d at 914 (dispatching with the same two arguments); *Foxhall Realty,* 156 F.3d at 437–38 (rejecting equal protection claim). It is critical to note that these constitutional arguments speak only to the propriety of exclusive state court jurisdiction and do not challenge the substantive provisions of the TCPA private action.

By contrast, where such a challenge was made and ruled on, federal subject matter jurisdiction for the ruling was held to be lacking. *See Chair King,* 131 F.3d at 509. In a case before the Fifth Circuit, the district judge reached the merits of allegations that the TCPA violates the First and Fifth Amendments (she held that it does not). *See id.,* 131 F.3d at 509. Upon finding that state courts have exclusive subject matter jurisdiction over private actions, the Court of Appeals vacated the lower court's order and remanded with directions to dismiss. *See id.* While the court did not explicitly consider whether the federal court had jurisdiction to entertain a constitutional challenge to the statute apart from a private litigant's attempt to enforce it, *Chair King* stands for the proposition that federal courts lack jurisdiction over constitutional defenses to TCPA actions when those actions are consigned exclusively to state courts.[4] After all, "[f]or a court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires." *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83,

---

4. The Ninth Circuit case that United Artists cites as an indication that this court has jurisdiction over its claim against ESI is inapposite. *See Destination Ventures, Ltd. v. F.C.C.,* 46 F.3d 54 (9th Cir.1995). There, Destination Ventures sued the FCC seeking a declaratory judgment that the statute violated the First Amendment. Because the FCC does not file private rights of action, an anticipated suit by the agency was not subject to the jurisdictional restriction of § 277(b)(3). Incidentally, the Ninth Circuit upheld the constitutionality of the challenged provision.

102, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). In addition, it is hard to imagine how, without falling afoul of the advisory opinion prohibition, the court could entertain only the constitutional question without reference to the threatened lawsuit over which it lacks jurisdiction.

United Artists tries to fit its claim to a familiar model, despite the repeated statements of the Courts of Appeals recognizing the "unusual constellation of statutory features" presented by the TCPA. *Murphey*, 204 F.3d at 915 (quoting *ErieNet*, 156 F.3d at 515). It contends that *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978), controls. Assuming that *Duke Power* remains good law, the court rejects its applicability on its facts.[5]

The case arose from the utility company Duke Power's plan to put up some nuclear power plants. Citizens' organizations sued Duke Power on the theory that a federal statute limiting the utility's liability in the event of an accident was unconstitutional. *See id.* at 67–68, 98 S.Ct. 2620. The plaintiffs included the United States Nuclear Regulatory Commission (NRC) as a co-defendant. *See id.* The Court found no basis for jurisdiction over either Duke Power or the NRC in the federal liability statute, but it determined that the general federal question jurisdiction statute conferred jurisdiction to hear the constitutional case defended by the NRC. *See id.* at 71, 98 S.Ct. 2620. As far as Duke Power was concerned,

> We need not resolve the question of whether Duke Power is a proper party since jurisdiction over appellees' claim against the NRC is established, and Duke's presence or absence makes no material difference to either our consideration of the merits of the controversy or our authority to award the requested relief.

*Id.* at 72, n. 16, 98 S.Ct. 2620.[6] At oral argument, ESI argued that the reason the Supreme Court did not consider itself obliged to answer this question is because it dismissed the case on other grounds.

 The issues *Duke Power* resolved are quite distinct from those in play here. In determining that federal jurisdiction existed over the citizen's suit against

---

**5.** A leading treatise criticizes *Duke Power's* standing and justiciability analysis, questioning why the NRC was found to be a proper party when it had no enforcement authority over the liability limit statute. *Moore's Federal Practice, supra* § 103.44[2] at 103–71.

Dissenting in *Duke Power*, then-Associate Justice Rehnquist viewed the matter as a declaratory judgment for state tort damages against Duke Power, to which Duke Power was presumed, for the purpose of the declaratory action, to raise the federal statute as a defense to liability. He urged that the case against Duke Power should be thrown out of federal court under the well-pleaded complaint rule. 438 U.S. at 97, 98 S.Ct. 2620 (Rehnquist, J., dissenting). The same commenter takes issue with Justice Rehnquist's analysis, even while finding it "all too persuasive," on the grounds that "in a case involving a vital matter of federal policy as well as important and difficult questions of federal

law, suit could not be brought in federal court." *Moore's Federal Practice, supra* at § 103.44[2] at 103–702. Regardless whether that result is desirable in the case of the federal nuclear liability statute, there is no question that with the TCPA, it is precisely the outcome that Congress expects.

**6.** Alert to this footnote, United Artists states that it is indifferent about ESI's participation: "ESI was named as a defendant in this action to afford it the opportunity to defend the TCPA's constitutionality. If ESI does not wish to avail itself of that opportunity, we have no objection. However, we fully intend to argue that the TCPA's unconstitutionality bars ESI's state-court claim." Response at 6. At oral argument, the parties debated the effect that a ruling here in United Artists' favor could have vis-à-vis the state litigation, to sound out whether a federal ruling could help United Artists or prejudice ESI.

the NRC, *Duke Power* applied the general rule that 28 U.S.C. § 1331 confers jurisdiction over actions challenging federal laws. What United Artists ignores is that in this case, Congress has trumped the general rule by specifically assigning jurisdiction over the private TCPA actions to state courts. *See ErieNet*, 156 F.3d at 518–19. Congress has the authority to restrict federal jurisdiction by statute to encompass less than the Constitution would allow. *Sheldon v. Sill*, 49 U.S. (8 How.) 441, 12 L.Ed. 1147 (1850); *see generally,* Gerald Gunther, *Congressional Power to Curtail Federal Court Jurisdiction: An Opinionated Guide to the Ongoing Debate*, 36 Stan.L.Rev. 895, 918–19 (1984). The TCPA clearly recognizes this power. Section 1331 confers jurisdiction to the federal courts only if another, more specific statute does not relegate jurisdiction to other courts. *See ErieNet*, 156 F.3d at 518; *see also Carpenter v. Dep't of Transportation*, 13 F.3d 313, 316 (9th Cir.1994) (specific grants of exclusive jurisdiction "override" general grants of jurisdiction to district courts); *see generally,* Kevin N. Tharp, Note, *Federal Court Jurisdiction over Private TCPA Claims; Why the Federal Courts of Appeals Got It Right*, 52 Fed. Comm.L.J. 189 (1999). Thus, determining whether federal jurisdiction exists over private TCPA actions does not require reference to the background assumptions about the scope of the federal question statute, but is plainly discernible in the express Congressional allocation of jurisdiction.

Moreover, *Duke Power* is distinguishable given its procedural posture. This case compels resolution of the very question *Duke Power* did not reach, because ESI has specifically asked to be dismissed from this action. The court must decide whether it has subject matter jurisdiction over the claim against ESI, and if it does not, it must grant ESI's motion and dismiss the claim against it. Having found *Duke Power* does not guide the decision here, the court concludes that *Chair King* is the best authority on this issue. Accordingly, the court finds that it lacks subject matter jurisdiction over the action against ESI.

■ At oral argument, United Artists' presented a jurisdictional theory not described in its papers and new to ESI. Conceding that no original federal jurisdiction exists over its claim against ESI, United Artists contended that the court should entertain the claim based on supplemental jurisdiction pursuant to 28 U.S.C. § 1367.[7] Reliance on supplemental jurisdiction raises questions about federal jurisdiction over the claim against the FCC, on which the claim against ESI would then depend. While United Artists insists that federal jurisdiction over the FCC is mandated under *Duke Power*, ESI questions whether the facts support a finding that United Artists has standing to sue the agency. ESI contends that the FCC has shown no interest in pursuing United Artists under the TCPA, so that there is no live controversy between the FCC and United Artists for judicial resolution.

In answering United Artists' complaint, the FCC denies that United Artists is entitled to any declaratory relief, but it has not moved for dismissal. While the FCC takes exception to United Artists' characterization that the agency is enforcing the TCPA "aggressively," it states that it lacks sufficient information to respond to United Artists' claim of injury on account of pending enforcement actions against it. An-

---

7. The supplemental jurisdiction argument was raised for the first time at oral argument, and while ESI's counsel ably disputed its applicability, the court would ordinarily allow ESI an opportunity to brief the issue before issuing a ruling. This particular matter, however, may be resolved in ESI's favor without the need for additional briefing.

swer (doc. # 14) ¶¶ 6, 14. In short, United Artists' sole remaining argument in favor of finding jurisdiction over its claims against ESI hangs on an assertion of original jurisdiction subject to a dispute that is not presently before the court.

 Under the supplemental jurisdiction statute, except as expressly provided otherwise by federal statute, federal courts exercise jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C.A. § 1367(a) (West 1993 & Supp.1999). Assuming that the state claims arise out of a common nucleus of operative facts with the federal claims, the statute allows the court discretion to refuse to exercise jurisdiction in four circumstances:

(1) the claim raises a novel or complex issue of state law

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C.A. § 1367(c); *Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc). If one of the listed "factual predicates" arises, a district court has discretion to refuse jurisdiction. *Executive Software North America, Inc. v. U.S. District Court*, 24 F.3d 1545, 1557 (9th Cir.1994). Discretion is informed by considering whether the exercise of jurisdiction advances "the values of economy, convenience, fairness, and comity." *Id.*

 Supplemental jurisdiction will not be extended to United Artists' claims against ESI for two reasons. First, the supplemental jurisdiction statute confers a general grant of jurisdiction that is canceled when another federal statute expressly provides otherwise. 28 U.S.C.A. § 1367(a). The discussion above establishes that the TCPA mandates exclusive state court jurisdiction over private causes of action. As explained by the Third Circuit, Congress's efforts to vest exclusive jurisdiction in other courts over certain causes of action may not be derailed by resort to general jurisdictional statutes. *See ErieNet*, 156 F.3d at 518; *see also Connors v. Amax Coal Co., Inc.*, 858 F.2d 1226, 1231 (7th Cir.1988). Thus, by the express terms of section 1367(a), which allows supplemental jurisdiction only as long as another statute does not provide otherwise, and by the logic prohibiting federal question jurisdiction over United Artists' claim, supplemental jurisdiction is unavailable.

 Second, the claims against the FCC and ESI cannot be construed as arising out of the same case or controversy. Under the TCPA, private parties may bring actions to enjoin unsolicited faxes and phone calls in state court if state law recognizes such actions. 47 U.S.C. § 227(b)(3). The FCC, however, is charged with implementation and enforcement of all relevant statutory provisions, *see id.* §§ 151, 154, and the TCPA contemplates similar enforcement. *Id.* §§ 227(b)(2), 227(f)(7). An enforcement action by the FCC is necessarily entirely distinct from one brought by a private party. Subject matter jurisdiction is wanting and the claims against ESI shall be dismissed.[8]

---

**8.** Were supplemental jurisdiction otherwise available, grounds for discretionary refusal exist, and such refusal would be advisable

under the circumstances. Of the four fact scenarios, 28 U.S.C. § 1367(c)(3) might apply if the court had an opportunity to decide

## B. Abstention

■ As an alternate ground for decision, ESI recommends that the court abstain from adjudicating the case against it. Given the complexity of the issues involved, reaching the alternate ground is advisable. To the extent that abstention presupposes the existence of jurisdiction, the following discussion goes forward on the possibility that subject matter jurisdiction exists here. *Cf. Transamerica Occidental Life Ins. Co. v. DiGregorio,* 811 F.2d 1249, 1250 (9th Cir.1987) (Court of Appeals disagreed with district court on subject matter jurisdiction issue but affirmed on abstention issue).

■ Abstention theories were created by judges and are subject to the meanderings of the common law, but a leading treatise organizes the cases into four doctrines: (1) *Pullman* abstention, to skirt a federal constitutional question where the case may be disposed of on questions of state law; (2) *Burford* abstention, to avoid needless conflict with the administration by a state of its own affairs; (3) abstention to allow states to resolve unsettled questions of state law; and (4) *Colorado River* abstention to avoid duplicative litigation. *See* 17A Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice & Procedure* § 4241 at 28–29 (2d ed.1988 and Supp.2000). The *Colorado*

*River* doctrine has been interpreted in relation to a case called *Brillhart,* which applies specifically when a federal declaratory judgment action is filed during the pendency of a state court action. *See Wilton v. Seven Falls Co.,* 515 U.S. 277, 115 S.Ct. 2137, 2141–42, 132 L.Ed.2d 214 (1995) (construing *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942)). Both *Colorado River* and *Brillhart* permit federal courts to defer to concurrent state court adjudication, but *Brillhart* sets federal declaratory judgment actions apart as a unique subset. While under the *Colorado River* doctrine "extraordinary circumstances" must be present to warrant abstention, when *Brillhart* applies, district judges have discretion to abstain. *Wilton,* 515 U.S. at 288, 115 S.Ct. at 2143. "Ordinarily, it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart,* 62 S.Ct. at 1175–76. Consequently, abstention may be invoked more readily when a declaratory judgment action is presented.

■ *Brillhart* diverges from *Colorado River* due to the different attributes of federal subject matter jurisdiction over

---

whether it had original jurisdiction over the claim against the FCC before having to decide this motion. In fairness, the ESI claims cannot be said to "substantially predominate" over the FCC claims, but attempting to apply subsection (c)(2) here only points up the implausibility that the two sets of claims can be considered part of the same case or controversy. The residual factual predicate for "exceptional circumstances" would apply, however. On reviewing the legislative history of the Judicial Improvements Act of 1990, the Ninth Circuit explained that subsections (c)(1)–(c)(3) codify "concrete applications" "recognized by courts to date," while subsection (c)(4) "carries forward the possibility of

their further extension." *Executive Software,* 24 F.3d at 1560. By all accounts, Congress's decision to isolate private TCPA actions in state courts is highly unusual. *See, e.g., Murphey,* 204 F.3d at 915. The compelling considerations that motivated Congress to devise the jurisdictional requirements of the TCPA suffice, where state courts are available to interpret the statute's constitutionality, to create a compelling reason to decline jurisdiction here. Moreover, opening a federal action would be inefficient considering the pendency of an action in a state forum presenting the same issues. To do so would be unfair to ESI. If the exercise of jurisdiction were discretionary, the court would decline.

declaratory judgments. *Colorado River* requires the presence of "exceptional circumstances" to get around the general imperative that federal courts must exercise jurisdiction they are given. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483; *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 109 S.Ct. 2506, 2512–13, 105 L.Ed.2d 298 (1989). In contrast, the grant of jurisdiction in the Declaratory Judgment Act is optional, providing that a court "may declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a). Because district courts may refuse to offer declaratory relief when considerations of "practicality and wise judicial administration" prevail, *Wilton*, 115 S.Ct. at 2143, abstention for those reasons is governed by the same discretion. "*Brillhart* makes clear that district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Id.* at 282, 115 S.Ct. at 2140.[9]

An obstacle to straightforward application of the *Brillhart* abstention doctrine to this case is the murkiness of its scope. *See generally* 17A Charles Alan Wright, et al., *Federal Practice and Procedure* § 4247 at 145–46 (2d ed.1988). In a concurrence that is viewed as critical to understanding the *Colorado River* doctrine, Justice Blackmun suggests that *Brillhart*, which is founded on diversity jurisdiction, has no application in cases posing a federal question. *See Will v. Calvert Fire Ins.*, 437 U.S. 655, 667, 98 S.Ct. 2552, 2560, 57 L.Ed.2d 504 (1978) (Blackmun, J., concurring in the judgment).[10] The opinion of the plurality, to which four justices subscribed, indicates that the jurisdictional basis for claims stayed by abstention is not an overbearing consideration. *See id.* at 664, 666 n. 9, 98 S.Ct. at 2558, 2559 n. 9.

Turned around, Blackmun's statement suggests that exercise of diversity jurisdiction is somehow more optional than exercise of federal question jurisdiction. Blackmun's brief concurrence does not reveal the theory undergirding this proposition. It is worth noting, however, that *Will* did not arise from a federal action for declaratory relief, but rather for damages. Thus, *Will* cannot be read without adjusting for the additional discretion that federal judges wield in declaratory actions.

In *Wilton*, the court discussed *Brillhart* abstention as if the court's discretion to deny declaratory relief were guided only by efficiency concerns, but in summing up, narrowed its holding: "We do not attempt at this time to delineate the other boundaries of that discretion in other cases, for example, cases raising issues of federal law or cases in which there are no parallel state proceedings." *Wilton*, 115 S.Ct. at

---

**9.** If the court decides to abstain, dismissal is disfavored and imposition of a stay is preferred. *See Wilton*, 115 S.Ct. at 2143, n. 2. In the event that the state court action does not resolve the controversy before the federal court, lifting the stay puts the parties back in the same position they were in before the decision to abstain, whereas statute of limitations and other problems may crop up if the declaratory plaintiff must revive its action by refiling. *See id.* (citing P. Bator, et al., *Hart and Wechsler's The Federal Courts and the Federal System*, 1451, n. 9 (3rd ed.1988)).

**10.** *Will* concerned the propriety of mandamus writs to compel district courts to proceed with adjudication of matters concurrently pending in state court. 437 U.S. at 657, 98 S.Ct. at 2554. The state action included claims under both state and federal law; the federal action raised similar issues but added a claim for which federal jurisdiction is exclusive. Only the parallel claims for which concurrent jurisdiction existed were stayed by the federal district judge. *Id.* at 659, 98 S.Ct. at 2555. The claim for which jurisdiction existed only in federal court went forward.

2144. The *Wilton* court did not venture to set forth rules for applying *Brillhart* to cases implicating other jurisdictional principles. As a consequence, the clearly articulated rationale supporting abstention where a declaratory action seeks duplicative relief collides with the principle that jurisdiction must be exercised if a federal question arises.

In fact, the nature of the issue the *Wilton* Court declined to reach is not entirely clear: in those cases where a federal question is raised, does the federal question arise in the claim for declaratory relief, or does it appear in a separate claim included in the declaratory complaint? The first possibility is the one broached by Justice Blackmun; the second possibility has been resolved in the Ninth Circuit.[11] In the present matter, only the first possibility concerns the court, for United Artists' complaint seeks solely declaratory relief.

Notwithstanding the limits of *Wilton,* other authorities support federal court deferral to state court actions even when federal statutes are to be construed. *See Exxon Shipping Co. v. Airport Depot Diner, Inc.,* 120 F.3d 166, 169–70 (9th Cir. 1997). In *Exxon Shipping,* the Court of Appeals found the district court's entry of judgment on a declaratory claim an abuse of discretion. "Contrary to the district judge's view, the federal court has no overriding 'duty to protect the uniformity of federal maritime law' from the rulings of a state court judge; indeed, it has no right to do so." *Id.* at 170.

Similarly, in upholding exclusive state court jurisdiction over TCPA actions, the Second Circuit expressly endorsed deferral to state courts if actions on the same issue commenced there first. *See Foxhall Realty,* 156 F.3d at 437. The *Foxhall* plaintiff pointed out that exclusive state jurisdiction over the actions of private parties would prevent consolidation of private actions with actions by state attorneys general. It believed that such a result was absurd. The Second Circuit disagreed, however, because "the first suit should have priority absent a showing of balance of convenience in favor of the second action to suits commenced in different districts over the same issue" *Id.* (citing *Mattel, Inc. v. Louis Marx & Co.,* 353 F.2d 421, 423 (2d Cir.1965)). While *Mattel* involved competing cases filed in separate United States District Courts, the Second Circuit in *Foxhall* transferred its rule of accommodation to the TCPA context.[12]

The court concludes that the federal constitutional issue raised by United Artists' complaint does not inhibit its discre-

---

**11.** The Ninth Circuit has observed that when a declaratory claim is accompanied by other claims that are properly in federal court, dismissal of either the declaratory claim or the entire action is likely inappropriate. *See Snodgrass v. Provident Life & Acc. Ins. Co.,* 147 F.3d 1163, 1168 (9th Cir.1998) (per curiam).

> Because claims of bad faith, breach of contract, breach of fiduciary duty and rescission provide an independent basis for federal diversity jurisdiction, the district court is without discretion to remand or decline to entertain these causes of action. Indeed, the district court has a "virtually unflagging" obligation to exercise jurisdiction over these claims.

*Government Employees Ins. Co. v. Dizol,* 133 F.3d 1220, 1225 n. 6 (9th Cir.1998) (en banc).

**12.** The principle determining the result in *Mattel* is that when the first-filed action will resolve the same issues between the parties, the court of the second-filed suit must defer to the first court and not compete by attempting to exert its jurisdiction concurrently. *See Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.,* 342 U.S. 180, 185, 72 S.Ct. 219, 222, 96 L.Ed. 200 (1952). The principle is no less applicable when the courts set in competition against each other are a federal district court and a state court.

tion to decline jurisdiction. To bring a claim pursuant to the Declaratory Judgment Act, the statute requires only that the anticipated suit be subject to federal jurisdiction. 28 U.S.C. § 2201. The propriety of judicial refusal to exercise jurisdiction is not contingent on the nature of the federal subject matter prerequisites of a given claim.

While there is no question that the presence of an issue of federal law is a significant factor to be considered, abstention depends on the facts of particular cases, and in this case, the presence of the federal issue is of less moment than Congress's express direction against federal jurisdiction.[13] Given that Congress has allocated the interpretation and application of the TCPA to state courts to complement pre-existing state law causes of action, there is no strong reason why a federal court should interlope on a state adjudication of a § 227(b) claim. The state courts are equally capable of determining the legality of the statute under the federal constitution. *See generally* Paul Bator, *State Courts and the Federal Constitution*, 22 Wm. & Mary L.Rev. 605 (1981). Accordingly, in the event that this court has subject matter jurisdiction over United Artists' claim against ESI, the public interest in preventing piecemeal litigation and the clear Congressional intent to delegate cases under the statute to state courts recommends abstention.

THEREFORE IT IS ORDERED, granting Defendant ESI's motion to dismiss (doc. # 6).

---

**13.** "A refusal to exercise jurisdiction for reasons within the sound principled discretion of the court is not the kind of ad hoc refusal to entertain an action that flirts with treason to the Constitution." David L. Shapiro, *Jurisdiction and Discretion*, 60 N.Y.U.L.Rev. 543, 573 (1985).